964 P.2d 484

James **BARNES** and Rose Mary Martinez–Barnes, husband and wife; Naomi Martinez Outlaw, in her individual capacity; Isaac Martinez, in his individual capacity, Plaintiffs/Appellees,

v.

James **OUTLAW,** Jr. and Cleopatra Outlaw, husband and wife; Andrew Outlaw, in his individual capacity; the Church of Jesus, an Arizona non-profit corporation, Defendants/Appellants.

No. CV–96–0616–PR.

Supreme Court of Arizona, En Banc.

Sept. 18, 1998.

---

Beus, Gilbert & Morrill, P.L.L.C. by John T. Moshier, Jeffrey D. Gross, and Maria Crimi Speth, Phoenix, for Plaintiffs/Appellees.

Sorenson, Moore, Evens, Marshall & Rocco by J. William Moore and John S. Schaper, Phoenix, for Defendanta/Appellants.

## OPINION

ZLAKET, Chief Justice.

¶1 Defendant James Outlaw is the pastor of the Church of Jesus, a non-profit religious organization located in Phoenix. His son Andrew is the associate pastor. Plaintiffs Rose Mary Martinez–Barnes, Naomi Martinez Outlaw, and Isaac Martinez are siblings, all members of the church. Each separately attended counseling sessions with the Rev. James Outlaw between 1986 and 1992. This lawsuit stems from the pastor's disclosure of confidential information revealed to him during those encounters. Because the detailed facts and complicated relationships between the parties are not critical to our decision, we only briefly summarize them here. A more extensive description may be found in the court of appeals' opinion. See Barnes v. Outlaw, 188 Ariz. 401, 937 P.2d 323 (App.1996).

¶2 Naomi and Andrew Outlaw married in early 1992, but separated shortly thereafter. In December of 1992, Naomi went to Andrew's trailer and found him with a woman. This incident created considerable tension between the Outlaws and Naomi's family. Following several confrontations, the Rev. James Outlaw allegedly threatened to disclose information about Naomi and her sister, Rose, that he had learned in the private counseling sessions. Thereafter, he told Rose that Naomi "is screwed up because she was molested by her father." Naomi had not previously confided in Rose about any molestation incidents. Finally, the reverend allegedly told church members that there were incest problems in the Martinez family, and during a religious service he announced to the congregation that the family was "dysfunctional."

¶3 Rose, Naomi, and Isaac brought claims for counseling malpractice, breach of fiduciary duty, invasion of privacy, "false light" invasion of privacy, and defamation. Rose's husband, James Barnes, filed a loss of consortium claim. A jury returned a verdict in favor of the plaintiffs on all claims. The court of appeals affirmed the judgments in favor of Rose, Naomi, and Isaac, but vacated James' loss of consortium award. We granted review of his cross-petition to determine whether one spouse can recover for loss of consortium absent physical injury to the other.

## DISCUSSION

¶4 Historically, loss of consortium claims were premised on a property right in the services of another. See W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*

§ 125, at 931 (5th ed.1984). Because wives and children were considered servants at common law, a husband or father could recover for the loss of their services, while a wife or child had no similar remedy. *See* Paul K. Charlton, Comment, *Frank v. Superior Court: Purging the Law of Outdated Theories for Loss of Consortium Recovery,* 29 Ariz. L.Rev. 541, 544 (1987). Over time, the focus of such an action shifted to the intangible values of a relationship; such as companionship and affection. *Id.* at 543.

¶ 5 Arizona law mirrors this change. In 1954, this court espoused the common law rule and refused to recognize a wife's cause of action for the loss of consortium of her husband. *See Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 227–28, 269 P.2d 723, 723–24 (1954). Almost twenty years later, however, we overruled that part of *Jeune,* stating "[w]hen we find that the common law or 'judge-made law' is unjust or out of step with the times, we have no reluctance to change it." *City of Glendale v. Bradshaw,* 108 Ariz. 582, 584, 503 P.2d 803, 805 (1972) (quoting *Lueck v. Superior Court,* 105 Ariz. 583, 585, 469 P.2d 68, 70 (1970)). In 1985, our court of appeals allowed parents to recover for the loss of consortium of their minor children, *see Reben v. Ely,* 146 Ariz. 309, 312, 705 P.2d 1360, 1363 (App.1985), and the following year we expanded *Reben* to include adult children. *See Frank v. Superior Court,* 150 Ariz. 228, 234, 722 P.2d 955, 961 (1986). Finally, we recognized a child's claim for the loss of consortium of a parent in *Villareal v. Arizona Dep't of Transp.,* 160 Ariz. 474, 477, 774 P.2d 213, 216 (1989).

■ ¶ 6 Defendants argue, however, that Arizona does not recognize a loss of consortium claim when the underlying injury is strictly emotional. The court of appeals agreed, basing its decision on the Restatement (Second) of Torts § 693 (1977):

One who by reason of his tortious conduct is liable to one spouse for *illness or other bodily harm* is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse.．．．

(Emphasis added). Plaintiffs respond that the Restatement does not limit consortium claims to situations where the spouse is physically injured, urging us to interpret the phrase "illness or other bodily harm" as including emotional well-being. We are not bound by the Restatement, however, so it is not necessary for us to decide whether this language should be construed in such a manner. Moreover, although we generally follow the Restatement absent statutes or case law to the contrary, we will not do so blindly. *See Cannon v. Dunn,* 145 Ariz. 115, 116, 700 P.2d 502, 503 (App.1985); *Villareal,* 160 Ariz. at 479, 774 P.2d at 218 (recognizing child's consortium claim despite Restatement rule that does not).

■ ¶ 7 Other jurisdictions are divided on this issue. *See, e.g., Molien v. Kaiser Found. Hosp.,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 822–23 (1980) (allowing loss of consortium claim without underlying physical injury); *Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155, 1160–61 (1982) (same); *Roche v. Egan,* 433 A.2d 757, 765 (Me.1981) (same). *But see Slovensky v. Birmingham News Co.,* 358 So.2d 474, 477 (Ala.Civ.App.1978) (requiring physical injury to support consortium claim); *Browning–Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 294 (Tex.1994) (same). In the absence of a clear majority rule, we believe the better course is to allow such a claim, even without physical injury, relying on the fact-finder to determine the legitimacy, nature, and extent of any alleged damages. We said as much in dicta almost a decade ago. In *Villareal,* we used the words *"mental or physical* impairment" to describe the type of injury that supports a child's claim for parental loss of consortium. 160 Ariz. at 480, 774 P.2d at 219 (emphasis added). Because that opinion did not directly address the issue, however, we do so now.

¶ 8 Defendants argue that loss of consortium damages in the absence of physical injury are inherently speculative and easily feigned. Physical injury, they say, is "the foundation of a loss of consortium claim because it validates the contention that a relationship has been impaired." The potential for fraud, however, exists to some extent in all cases, not only those involving emotional injury claims. *See* Leslie Benton Sandor & Carol Berry, *Recovery for Negligent Infliction of Emotional Distress Attendant to Eco-*

*nomic Loss: A Reassessment,* 37 Ariz. L.Rev. 1247, 1254 (1995). Furthermore, because loss of consortium is a derivative claim, *see Villareal,* 160 Ariz. at 481, 774 P.2d at 220, all elements of the underlying cause must be proven before the claim can exist. This requirement in itself serves as some protection against feigned or fabricated assertions. In any event, the risk of fraud does not justify absolute barriers to recovery. *Id.* Fact-finders, usually jurors, can and should draw on their own experiences to distinguish between legitimate and fictitious claims, and are frequently called upon to do so. *Id.* at 1255. We agree with the California Supreme Court when it states:

> Whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to a cause of action for loss of consortium is a matter of proof. When the injury is emotional rather than physical, the plaintiff may have a more difficult task in proving negligence, causation, and the requisite degree of harm; but these are questions for the jury, as in all litigation for loss of consortium.

*Molien,* 167 Cal.Rptr. 831, 616 P.2d at 823.

¶ 9   Arizona courts long ago abandoned a skeptical attitude toward emotional injuries and have increasingly been willing to compensate those having validity. *See, e.g., Reed v. Real Detective Publ'g Co.,* 63 Ariz. 294, 306, 162 P.2d 133, 139 (1945) ("[T]he mind of an individual, his feelings and mental processes, are as much a part of his person as his observable physical members. An injury, therefore, which affects the sensibilities is equally an injury to the person as an injury to the body would be."); *Skousen v. Nidy,* 90 Ariz. 215, 219, 367 P.2d 248, 250 (1961) ("It is the general rule that in actions for personal injuries due to an intentional tort, physical injury need not be sustained. Mental suffering ... is usually considered an injury for which damages may be given."). We see no reason to create a different rule in the loss of consortium context. Our view comports with medical science's ever-increasing understanding of the mind and its relationship to human well-being.

¶ 10   Consortium includes "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations." *Frank,* 150 Ariz. at 229 n. 1, 722 P.2d at 956 n. 1. The purpose of a consortium claim is to compensate for the loss of these elements, *see Reben,* 146 Ariz. at 311, 705 P.2d at 1362, which certainly can result from psychological injury as well as physical harm. *Molien,* 167 Cal.Rptr. 831, 616 P.2d at 822. Clearly, a marriage may be damaged by emotional trauma. Since loss of consortium is no longer exclusively based on a deprivation of services theory, we see no reason to require physical injury to one spouse before the other may bring a claim.

¶ 11   We do not mean to suggest that in every tort action there exists a corresponding loss of consortium claim. There must first be some basis to infer that affection or companionship was actually lost. *See* Keeton et al., *supra,* at 933. Whether the marital relationship has been harmed enough to warrant damages in any given case is a matter for the jury to decide.

¶ 12   We affirm the judgment of the trial court, and vacate that part of the court of appeals' decision reversing the loss of consortium judgment.

JONES, V.C.J., FELDMAN and MARTONE, JJ., and JAMES MOELLER, Justice (Retired), concur.