174 P.3d 777

Samuel E. **POWERS**, a married man, Plaintiff–Appellant,

v.

**TASER INTERNATIONAL, INC.,**
a Delaware corporation,
Defendant–Appellee.

No. 1 CA–CV 06–545.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 31, 2007.

As Corrected Jan. 4, 2008.

Dillingham & Reynolds LLP By John L. Dillingham and Thomas C. Wilmer, PC By Thomas C. Wilmer, Phoenix, Attorneys for Plaintiff–Appellant.

Paul G. Ulrich PC By Paul G. Ulrich, Pamela B. Petersen, and Renaud Cook Drury & Mesaros PA By Charles A. Struble, Christina J. Reid–Moore, William W. Drury, Jr., Phoenix, Attorneys for Defendant–Appellee.

## OPINION

BARKER, Judge.

¶ 1 This Opinion addresses whether the hindsight test should be applied to a strict liability products claim alleging failure to warn as the defect. That test was adopted in *Dart v. Wiebe Manufacturing, Inc.* for strict liability products claims based on design defects. 147 Ariz. 242, 709 P.2d 876 (1985). The court expressly left open that issue as to strict liability products claims asserting a failure to warn. 147 Ariz. at 247 n. 2, 709 P.2d at 881 n. 2. For the reasons set forth below, we decline the invitation to adopt the hindsight test for such claims.

¶ 2 We also address whether an offer of judgment that is conditioned upon confidentiality complies with Rule 68, Arizona Rules of Civil Procedure. As discussed herein, we determine that it does.

### I.

¶ 3 Plaintiff–Appellant Samuel E. Powers appeals a jury verdict in favor of Defendant–Appellee Taser International, Inc. ("Taser") on Powers' claim for strict products liability arising out of the alleged injury he suffered when shocked by the Advanced Taser M–26 ("M–26").

¶ 4 Taser manufactures and sells conducted energy weapons, including the M–26, which employs electro-muscular disruption (EMD) technology to stimulate a person's motor nerves, causing an involuntary muscle contraction.[1] The evidence at trial was that earlier electric weapon devices affected only the sensory nervous system and relied pri-

marily on pain compliance, which can be overcome by the recipient through focus or when he or she is under the effects of drugs or alcohol. The M–26, however, is designed to affect the sensory and motor nervous systems, overriding the central nervous system and causing uncontrollable muscle contractions that make it physically impossible for a person exposed to the M–26 to not respond to its effects.

¶ 5 On July 16, 2002, Powers was a sixteen-year veteran of the Maricopa County Sheriff's Office ("MCSO"), where he worked as a deputy sheriff. That morning, he participated in a training and certification course offered by the MCSO that was a prerequisite to being certified to carry the M–26. During the course, Powers received training materials prepared by Taser and viewed a Power-Point Presentation regarding the M–26.

¶ 6 The materials described the M–26 as a "less-lethal" weapon and represented that the M–26 had been (1) tested on animals and found to have no effect on heart rhythms and (2) deployed on more than 3000 persons with no long-term effects. The materials warned, however, that short-term injuries could result from a fall associated with exposure to the M–26, noting that the most significant injuries to date had been "cuts, bruises and abrasions." In addition, as part of the training course, Powers viewed several videos showing individuals being exposed to the M–26.

¶ 7 As part of the course and as a prerequisite for certification to carry the M–26, the MCSO required all officers to be exposed to the electrical force of the M–26. Powers agreed to be exposed to the M–26 and was struck by the device. As a result of his exposure to the M–26, Powers allegedly suffered a compression fracture of his T–7 spinal disc.

¶ 8 Powers' physician, Dr. Terry McLean, discovered while treating Powers for this injury that Powers had severe osteoporosis, a quantitative loss of bone mass that weakens the bones. As a result of his osteoporosis

---

1. We view the evidence in the light most favorable to upholding the jury's verdict. *Larsen v.* *Nissan Motor Corp.*, 194 Ariz. 142, 144, ¶ 2, 978 P.2d 119, 121 (App.1998).

and his physician's orders restricting him to light duty, Powers was unable to continue to work as a deputy sheriff and resigned from the MCSO in June 2003.

¶ 9 Powers filed suit against Taser, alleging that the M–26 was unreasonably dangerous and defective because it lacked adequate instructions and warnings. He alleged that as a direct and proximate result of the defective and unreasonably dangerous condition of the M–26, he suffered severe and permanent injuries for which he sought compensation. Taser argued at trial that because it did not know that the muscle contractions produced by the M–26 were strong enough to cause a fracture, it was not required to warn Powers about such a danger and contested his claimed damages.

¶ 10 The jury returned a general verdict in favor of Taser. Powers moved for a new trial, which was denied. The court also awarded as a sanction under Rule 68(d), Arizona Rules of Civil Procedure, reasonable expert witness fees of $24,414.90. Taser sought sanctions under Rule 68(d) as it had presented an offer of judgment more favorable to Powers than the outcome at trial. Powers objected to the trial court's award of Rule 68(d) sanctions, arguing that Taser's offer of judgment was unenforceable because it was conditioned upon confidentiality and therefore did not comply with Rule 68(b). The objection was denied and sanctions in the form of reasonable expert fees were awarded.

¶ 11 Powers timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) & (F) (2003). Powers raised issues on appeal in addition to those set forth in this Opinion. We resolve them, pursuant to Arizona Rule of Civil Appellate Procedure 28(d), in a simultaneously filed Memorandum Decision.

## II.

### A.

¶ 12 Powers argues that Arizona has adopted a "hindsight" approach in strict liability cases involving alleged informational defects and claims the trial court erroneously failed to instruct the jury that it could impute to Taser knowledge of the danger of the M–26 that was revealed subsequent to Taser's distribution of the product. We review jury instructions as a whole to determine whether the jury was properly guided in its deliberations. *Pima County v. Gonzalez,* 193 Ariz. 18, 20, ¶ 7, 969 P.2d 183, 185 (App.1998). An instruction will only warrant reversal if it was both harmful to the complaining party and directly contrary to the rule of law. *Amerco v. Shoen,* 184 Ariz. 150, 156–57, 907 P.2d 536, 542–43 (App.1995) (finding no error with trial court's instructions that, viewed as a whole, gave the jury the proper rules to be applied and did not suggest a conclusion contrary to law). We will not overturn a jury verdict on the basis of an improper instruction "unless there is substantial doubt whether the jury was properly guided in its deliberations." *Barnes v. Outlaw,* 188 Ariz. 401, 405, 937 P.2d 323, 327 (App.1996), *aff'd in part and rev'd in part on other grounds,* 192 Ariz. 283, 964 P.2d 484 (1998).

¶ 13 The trial court ruled before trial that Taser's "duty to warn under a product liability claim for relief is ... a foresight test, i.e., what the manufacturer of the product knew or reasonably should have known when the product was introduced into the stream of commerce, and not a hindsight test." Consistent with this ruling, throughout the trial the court excluded evidence of subsequent testing of the M–26, except as it pertained to the feasibility of having performed that testing prior to Powers' injury.[2] Despite the court's position, at the conclusion of trial Powers requested that the court instruct the jury that it could impute to Taser knowledge of dangers associated with the M–26 that only became known after Powers' injury. Specifically, Powers requested that the trial court instruct the jury based on alternative 2 set forth in Revised Arizona Jury Instruction—Product Liability 4 (January 2005) ("RAJI 4"). RAJI 4 states:

[Name of plaintiff] claims that there was not (an) adequate [warning][instruction]

---

**2.** Given these clear and consistent rulings, we reject Powers' argument that the court did not rule on this issue until it settled the jury instructions.

on/with the product. A product, even if faultlessly made, is defective and unreasonably dangerous if it would be unreasonably dangerous for use in a reasonably foreseeable manner without (an) adequate [warning(s) ] [instruction(s) ].

RAJI 4 (2005). The RAJI Committee then gave a choice of two alternatives to complete the instruction. Alternative 1 states:

A product is defective and unreasonably dangerous if a manufacturer or seller who knows or should know that a foreseeable use of its product may be unreasonably dangerous does not provide adequate [warning(s) of the danger][instruction(s) for reasonably safe use].

*Id.* Alternative 2 provides:

[A manufacturer or seller is presumed to have known at all relevant times the facts that this accident and this trial have revealed about the harmful characteristics of the product and the consequences of its reasonably foreseeable use, whether or not the manufacturer or seller actually knew those facts. If you find that it would not be reasonable for a manufacturer or seller, with such presumed knowledge, to have put this product on the market without providing (an) adequate [warning(s) of the danger][instruction(s) for reasonably safe use], then the product is defective and unreasonably dangerous.]

*Id.* Taser objected to Powers' proposed instruction, arguing that because the court had already ruled that it would not apply the hindsight test, the court should instruct the jury based upon alternative 1 to RAJI 4.

¶ 14 In the notes to RAJI 4, the Committee suggests that the court give the first paragraph of the instruction and either the second paragraph or the third paragraph, depending on the circumstances of the case, explaining:

The Committee was unable to determine, as a result of the Arizona Supreme Court's footnote 2 in *Dart v. Wiebe Manufactur-*

ing, Inc., 147 Ariz. 242, 709 P.2d 876 (1985), whether a hindsight test is applied in strict liability information defect cases. The court expressly reserved this question in *Dart.* Some members of the Committee hold to the view that *Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 737 P.2d 376 (1987), resolves this issue in favor of using a hindsight test. Other members are of the view that until the Arizona Supreme Court actually addresses its reservation in *Dart,* it is reversible error to give a hindsight instruction in an information defect case. The [alternative 1] language is essentially a negligence instruction, but the Committee is unaware of any other alternatives to a hindsight instruction. If a hindsight test is not applicable, then the [alternative 1] language should be used. If a hindsight test is applicable, [alternative 2] language should be used.

RAJI 4, Use Note & Footnotes 1 & 2. The trial court gave a non-hindsight instruction similar to alternative 1, but included language that clarified what Taser should have known:

Plaintiff claims that there was not an adequate warning on/with the product. A product, even if faultlessly made, is defective and unreasonably dangerous if it would be unreasonably dangerous for use in a reasonably foreseeable manner without an adequate warning(s).

A product is defective and unreasonably dangerous if a manufacturer or seller who knows or should know that a foreseeable use of its product may be unreasonably dangerous does not provide adequate warning(s) of the danger for reasonably safe use.

A seller of a product must warn of a particular risk that was known or knowable in light of the generally recognized and prevailing scientific and medical knowledge available at the time of its distribution.[3]

---

**3.** The third paragraph of the court's instruction was taken from *Carlin v. Sup. Ct.,* 13 Cal.4th 1104, 1112, 56 Cal.Rptr.2d 162, 920 P.2d 1347, 1355 (1996). Taser asserts that Powers invited any error in the instruction by offering and expressly agreeing to this language. However, it is evident from the record and counsel's discussion with the court when settling jury instructions that Powers did not intend to abandon his argument that the court should instruct the jury based upon the hindsight test.

¶ 15 Powers contends the trial court erred by refusing to instruct the jury to apply the hindsight test in this case, and by instead instructing the jury that it could only consider whether, at the time of the M–26's distribution, Taser knew or should have known that the M–26 was unreasonably dangerous unless accompanied by adequate warnings.

**B.**

¶ 16 The Arizona Supreme Court first adopted an imputed knowledge, or "hindsight," test in *Dart v. Wiebe Manufacturing, Inc.*, a case involving an alleged design defect. 147 Ariz. at 247, 709 P.2d at 881. In that case, the plaintiff sued the manufacturer of an industrial paper shredder after he was seriously injured by a shredding machine. *Id.* at 243, 709 P.2d at 877. The plaintiff alleged that the shredder was defectively designed because it lacked safety guards that would have prevented the injury. *Id.* The trial court gave the jury a single instruction regarding the plaintiff's separate theories of negligence and strict liability. *Id.* The Arizona Supreme Court reversed, ruling that in order to preserve the difference between negligence and strict liability theories, the applicable standard for each claim must be different. *Id.*

¶ 17 The court wrote that to prove negligence, a plaintiff must prove that the manufacturer acted unreasonably at the time of manufacture or design of the product. *Id.* at 247, 709 P.2d at 881. However, in a strict liability analysis, "it is not the conduct of the manufacturer or designer which is primarily in question, but rather the quality of the end result; the product is the focus of the inquiry." *Id.* The court thus held that with regard to the plaintiff's claim for strict liability, the jury should have been instructed that the "quality of the product may be measured not only by the information available to the manufacturer at the time of design, *but also by*

*the information available to the trier of fact at the time of trial.*" *Id.* (emphasis added).

¶ 18 The Arizona Supreme Court did not extend this holding to failure to warn cases, and, in fact, expressly declined to reach the issue whether a hindsight test should be applied in strict liability cases involving the failure to warn or those involving inherently dangerous products. *Id.* at 247 n. 2, 709 P.2d at 881 n. 2, ("We do not reach the issue of whether a 'hindsight test' is to be applied to strict liability cases involving failure to warn or those involving unavoidably unsafe products."). Subsequent Arizona cases have reiterated the fundamental difference between negligence and strict products liability theories discussed in *Dart,* but have not extended the hindsight test to failure to warn cases. *Gosewisch,* 153 Ariz. at 403, 737 P.2d at 379, *superseded by statute on other grounds as stated in Jimenez v. Sears, Roebuck and Co.,* 183 Ariz. 399, 904 P.2d 861 (1995); *Golonka v. Gen. Motors Corp.,* 204 Ariz. 575, 581–82, 65 P.3d 956, 962–63 (App.2003).[4]

¶ 19 In the absence of Arizona law specifically addressing the court's reservation in *Dart,* we would ordinarily follow pre-*Dart* authority, in which Arizona courts applied a foreseeability test in warning cases. *Schneider v. Cessna Aircraft Co.,* 150 Ariz. 153, 158–59, 722 P.2d 321, 326–27 (App.1985) (reversing jury verdict because trial court erroneously refused to instruct jury that defendant could be held strictly liable for failing to warn of product dangers that manufacturer had "reason to foresee"); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 434, 581 P.2d 271, 279 (App.1978) (holding that whether a product is defective or unreasonably dangerous because of a failure to warn depends on foreseeability, seriousness, and the cost of preventing injury). Such an approach would also be consistent with the Restatement (Third) of Torts: Products Liability ("Re-

4. The footnotes for RAJI 4 indicate that some committee members were of the view that *Gosewisch* "resolves this issue in favor of using a hindsight test." RAJI 4, nn. 1, 2. We do not subscribe to that view. In *Gosewisch,* the court dealt with whether there were adequate facts to support a failure to warn instruction. 153 Ariz. at 402–05, 737 P.2d at 378–81. The focus of the court's inquiry was causation. *Id.* at 403, 737 P.2d at 379. The court "conclude[d] that there was insufficient evidence of the causal relationship between Gosewisch's injury and the alleged inadequacy or lack of warnings." *Id.* at 405, 737 P.2d at 381. Whether the hindsight test should be applied in a failure to warn case was not at issue.

statement Third") § 2(c)(1998), which provides that a product:

> [I]s defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the [manufacturer], ... and *the omission of the instructions or warnings renders the product not reasonably safe.*[5]

Absent controlling Arizona law to the contrary, we generally follow the Restatement, provided we deem it good legal authority. *In re Krohn,* 203 Ariz. 205, 210, ¶ 18, 52 P.3d 774, 779 (2002) (stating the Arizona Supreme Court has long followed the rule that it will follow the Restatement when not bound by previous decisions or legislative enactment); *Southwest Pet Prod., Inc., v. Koch Indus.,* 273 F.Supp.2d 1041, 1052 n. 17 (D.Ariz.2003) (stating reliance on Restatement Third is in keeping with "Arizona's long-standing policy to look to the Restatement absent contrary precedent."). However, we do not follow the Restatement blindly, *Barnes,* 192 Ariz. at 285, ¶ 6, 964 P.2d at 486, and will come to a contrary conclusion if Arizona law suggests otherwise. *Wilcox v. Waldman,* 154 Ariz. 532, 536, 744 P.2d 444, 448 (App.1987). Powers argues that we should not follow pre-*Dart* Arizona warning defect cases and the Restatement, and instead urges us to extend the Arizona Supreme Court's holding in *Dart* to warning defect cases, contending that the considerations the court relied on in *Dart* when adopting the hindsight test support the application of the same test in warning defect cases. We therefore consider whether the Restatement position is good legal authority under Arizona law, particularly in light of *Dart.*

### C.

¶ 20 The court in *Dart* focused on the differences between the doctrine of negligence, which centers on the reasonableness of the manufacturer's conduct, and the doctrine of strict liability, which centers on the quality of the product. 147 Ariz. at 246–47, 709 P.2d at 880–81. The court ruled that by imposing on the manufacturer constructive knowledge of the condition of the product as revealed at trial, the inquiry would remain focused on the quality of the product, rather than on the reasonableness of the manufacturer's conduct in selecting the particular product design. *Id.* at 247, 709 P.2d at 881. In adopting this test, the court noted that it was "generally recommended by the commentators, and by precedent." *Id.* However, this circumstance has since changed, as the initial proponents of the hindsight doctrine later withdrew their support for the view, observing that a product's design should be measured in terms of the technology available at the time of manufacture. *See* Restatement Third § 2 cmt. m(1) (citing numerous academic articles taking issue with the validity of the hindsight approach).

¶ 21 Accordingly, the standard adopted by the Arizona Supreme Court in *Dart* is inconsistent with the recently adopted Restatement Third, which provides that a product is defective in design when "the *foreseeable* risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design." Restatement Third § 2(b) (emphasis added). In adopting this view, the American Law Institute expressly rejected the hindsight approach in design defect cases, citing widespread academic criticism of, and relatively thin judicial support for, the theory. Restatement Third § 2, note m.1 ("Given the criticism that has been leveled against the imputation of knowledge doctrine and the relatively thin judicial support for it, it is here rejected as a doctrinal matter."). We are, of course, bound by the Arizona Supreme Court's holding in *Dart* as it applies to design defect cases, even though the authori-

---

**5.** This standard further develops the view set forth in the Restatement (Second) of Torts ("Restatement Second") § 402A (1965), which required that a manufacturer give warnings to prevent a product from being unreasonably dangerous only, "if [the manufacturer] has knowledge, or by the application of reasonable, devel-oped human skill and foresight should have knowledge, of the presence of the ... danger." Restatement Second § 402A cmt. j. The Restatement Third § 2 approach to warning defects thus parallels the standard set forth for determining design defects. Restatement Third § 2, cmt. i.

ties the court relied upon in *Dart* have been modified. *City of Phoenix v. Leroy's Liquors Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993) (stating court of appeals is bound by decisions of the supreme court and may not "overrule, modify or disregard them"). Nevertheless, we give due regard to this recent criticism and authority when evaluating whether we should extend the holding in *Dart* to warning defect cases.

¶ 22 There are other reasons not to extend *Dart* to warning defect cases. The nature of a design defect case is fundamentally different than a failure to warn case. *See Anderson v. Owens–Corning Fiberglas Corp.,* 53 Cal.3d 987, 1002, 281 Cal.Rptr. 528, 810 P.2d 549, 558 (1991) (positing that the warning defect theory is "rooted in negligence" to a greater extent than manufacturing or design defect theories). Accordingly, the same analysis applied by the court in *Dart* cannot simply be imported wholesale to determine the proper standard in a warnings defect case. "The 'warning defect' relates to a failure extraneous to the product itself. Thus, while a manufacturing or design defect *can be* evaluated without reference to the conduct of the manufacturer, the giving of a warning cannot." *Id.* (emphasis in original) (internal citations omitted). The Arizona Supreme Court impliedly recognized this essential distinction in *Dart* when it refused to extend the hindsight test to warning defect claims, citing *Kearl v. Lederle Labs.,* 172 Cal.App.3d 812, 218 Cal.Rptr. 453 (1985).

¶ 23 The California Court of Appeal ruled in *Kearl* that a products liability claim based on a failure to warn about an unavoidably dangerous product could not be brought in strict liability, only negligence, because the adequacy of the manufacturer's warning must be based on a determination regarding what it knew or should have known. *Id.* at 832–33, 218 Cal.Rptr. 453. Although the California Supreme Court later overruled *Kearl* in *Brown v. Superior Court,* 44 Cal.3d 1049, 1069, 245 Cal.Rptr. 412, 751 P.2d 470, 482–83 (1988), holding that a claim may be brought in strict liability for failure to warn of una-

voidably dangerous products, the court in *Brown* reiterated that the applicable standard is *foreseeability,* stating that a product must be "accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." 44 Cal.3d at 1068–69, 245 Cal.Rptr. 412, 751 P.2d at 483.[6]

¶ 24 Moreover, as the California Supreme Court has recognized, applying a foresight test does not eliminate the distinction between negligence and strict liability:

[D]espite its roots in negligence, failure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. *Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.*

*Anderson,* 53 Cal.3d at 1002–03, 281 Cal. Rptr. 528, 810 P.2d at 558–59 (emphasis added). Thus, applying a foresight test in failure to warn cases would not eliminate the distinction between negligence and strict liability as the court in *Dart* was concerned would happen in design defect cases.

¶ 25 Finally, it is our view that employing the hindsight test in warning defect cases would be tantamount to imposing a duty on manufacturers to warn of unknowable dangers. *Id.* at 998, 281 Cal.Rptr. 528, 810 P.2d at 555 ("To exact an obligation to warn the user of unknown and unknowable allergies,

---

**6.** Both *Kearl* and *Brown* involved pharmaceutical products. In Anderson, the California Supreme Court extended its holding in *Brown* to cases not

involving prescription drugs. 53 Cal.3d at 1000, 281 Cal.Rptr. 528, 810 P.2d at 557.

sensitivities and idiosyncrasies would be for the courts to recast the manufacturer in the role of an insurer....”). As the Arizona Supreme Court recognized in *Dart*, however, the doctrine of strict liability does not impose liability for every injury caused by a product. 147 Ariz. at 244, 709 P.2d at 878. *See also Anderson*, 53 Cal.3d at 994, 281 Cal.Rptr. 528, 810 P.2d at 552 (“From its inception, ... strict liability has never been, and is not now, *absolute* liability ... [U]nder strict liability the manufacturer does not thereby become the insurer of the safety of the product's use.”) (citations omitted); Restatement Third § 2, note M (“Unforeseeable risks arising from foreseeable product use or consumption by definition cannot specifically be warned against.... A seller is charged with knowledge of what reasonable testing would reveal.”). For this reason, a majority of jurisdictions reject the approach in warning defect cases, instead requiring a manufacturer to warn only of risks that were known or should have been known to a reasonable manufacturer. *See, e.g., Anderson*, 53 Cal.3d at 999, 281 Cal.Rptr. 528, 810 P.2d at 557 (holding that “knowledge, actual or constructive, is a requisite for strict liability for failure to warn.”); *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1172 (Colo.1993) (“We agree with the petitioners that state-of-the-art evidence is properly admissible to establish that a product is not defective and unreasonably dangerous because of a failure-to-warn. A manufacturer cannot warn of dangers that were not known to it or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution.”); *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194, 198 (1980) (“requiring a plaintiff to plead and prove that the defendant manufacturer knew or should have known of the danger that caused the injury, and that the defendant manufacturer failed to warn plaintiff of that danger, is a reasonable requirement, and one which focuses on the nature of the product and the adequacy of the warning, rather than on the conduct of the manufacturer”).

¶ 26 Accordingly, we decline to extend Arizona law to adopt the hindsight test from *Dart* in failure to warn strict liability cases. The trial court did not err by instructing the jury that it could only consider whether, at the time of the M–26's distribution, Taser knew or should have known that the M–26 was unreasonably dangerous unless accompanied by an adequate warning.

### III.

¶ 27 Powers also challenges the trial court's award of sanctions to Taser under Rule 68(d), Arizona Rules of Civil Procedure, on the basis that Taser's offer of judgment was unenforceable because it was conditioned upon Powers maintaining the confidentiality of the terms of the offer.

¶ 28 The meaning and effect of a court rule is a question of law which we review de novo. *Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005). In interpreting court rules we base our analysis, as with statutes, on the language of the rule. *State v. Superior Court (Stewart)*, 168 Ariz. 167, 169, 812 P.2d 985, 987 (1991). (“[W]hen the rule's language is not subject to different interpretations, we need look no further than that language to determine the drafters' intent.”) Accordingly, we turn to the language of the rule.

¶ 29 Rule 68(a) provides, “At any time more than 30 days before the trial begins, any party may serve upon the adverse party an offer to allow judgment to be entered in the action in accordance with the terms and conditions specified in the offer, plus costs then accrued.” If the offer to allow judgment is not accepted, and the “judgment finally obtained is equal to, or more favorable to the offeror than, the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror ... incurred after the making of the offer.” Ariz. R. Civ. P. 68(d).

¶ 30 The trial court awarded Taser its costs incurred in the litigation because the jury verdict for Taser was more favorable to Taser than its offer to pay Powers to settle the matter before trial. Powers argues that because the terms of Taser's offer precluded

him from complying with the rule by filing the offer with the court, it was not a legitimate offer of judgment, and the trial court therefore erred by granting Taser's request for Rule 68 sanctions.

¶ 31 As an initial matter, we note that Rule 68(a) expressly provides that an offer of judgment may be conditioned upon compliance with the terms and conditions specified in the offer. Thus, the mere fact that Taser's offer was conditioned upon the "agreement of [Powers] not to disclose the facts of the settlement or Offer or the amount of the Offer" does not make the offer unenforceable.

¶ 32 However, Powers argues that the particular condition contained in Taser's offer, confidentiality of the settlement agreement and amount, precluded Powers from filing the offer in accordance with Rule 68(b). Rule 68(b) provides that once an offer of judgment is accepted in writing, "either party *may* then file the offer together with proof of acceptance thereof and a judgment complying with the requirements of Rule 58(a) shall be entered." (Emphasis added.); *see also* Ariz. R. Civ. P. 68(c)(2). On its face, Rule 68(b) does not obligate either party to an offer of judgment to file the offer and acceptance; such an action is permitted but not required. For instance, once a Rule 68 offer is accepted, the parties could file with the court a stipulation for dismissal that contained none of the offer's specific terms. Because Rule 68(b) is permissive as to the filing of the offer itself, the confidentiality provision contained in Taser's offer of judgment did not render the offer unenforceable.

¶ 33 Moreover, even if Rule 68(b) did require Powers to file Taser's offer of judg-

ment along with his acceptance thereof, Powers had the option to request filing those documents under seal, thereby complying with the terms of Taser's offer. *See Catrone v. Miles,* 215 Ariz. 446, 450, 458, ¶¶ 6, 36, 160 P.3d 1204, 1208, 1216 (App.2007) (approving a procedure permitting sensitive information to be filed under seal); *Martin v. Reinstein,* 195 Ariz. 293, 321, ¶ 101, 987 P.2d 779, 807 (App.1999) ("If petitioners need additional protection, they may request that information be submitted to the court under seal or that the file be sealed."); Ariz. R. Sup.Ct. 123(c)(1) ("[T]he records in all courts and administrative offices of the Judicial Department of the State of Arizona are presumed to be open to any member of the public.... However, in view of the possible countervailing interests of confidentiality, privacy or the best interests of the state public access to some court records may be restricted....").

¶ 34 Thus, we find no error in the trial court's award of sanctions to Taser under Rule 68(d).

## IV.

¶ 35 For the foregoing reasons, and those set forth in the Memorandum Decision filed this date, we affirm.

CONCURRING: ANN A. SCOTT TIMMER, Judge, and SUSAN A. EHRLICH, Judge.

175 P.3d 71