NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STACIE L. MARTINEZ and EDWARD MARTINEZ, a married couple,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

HUBERT SCOTT BLAKE,
*Defendant/Appellee/Cross-Appellant*

No. 1 CA-CV 23-0398
FILED 4-11-2024

---

Appeal from the Superior Court in Yavapai County
No. P1300CV202100609
The Honorable John David Napper, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Goldberg & Osborne LLP, Phoenix
By John A. Musacchio, Marc A. Kamin
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

O'Connor & Dyet, P.C., Tempe
By Andres Chagolla III, Shane P. Dyet
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

---

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1        Stacie and Edward Martinez appeal the superior court's grant of summary judgment on their tort claims against Hubert Scott Blake, as well as its award of costs. Blake cross-appeals the denial of his request for attorneys' fees. Because the Martinezes failed to present any evidence to establish an essential element of their claims, we affirm the grant of summary judgment. We also affirm the court's denial of Blake's request for attorneys' fees because this action did not arise out of contract for purposes of A.R.S. § 12-341.01. We vacate, however, the court's award of all of Blake's requested costs, many of which do not qualify as taxable costs under A.R.S. § 12-332, and remand for further proceedings consistent with this decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        While moving out of a rental property Blake owned, Stacie stepped onto wooden stairs leading from a raised porch to the ground.[1] As she descended, one of the steps gave way and Stacie fell through, fracturing her ankle.

¶3        The Martinezes filed a complaint against Blake, alleging he failed to properly maintain the rental property in a reasonably safe condition, causing them injury (raising claims of negligence, premises liability, breach of the warranty of habitability, and loss of consortium). Blake denied liability and moved for summary judgment, arguing, among other things, that the Martinezes had failed to produce any evidence that a premises defect existed when they took possession of the rental property six months before the incident or that he otherwise had reason to know of any purported defect. In support of his motion, Blake pointed to the Martinezes' deposition testimony that they were unaware of a defect before Stacie fell through the step. In response, the Martinezes countered that Blake owed them, as month-to-month tenants, a continuing duty to inspect

---

[1]        For clarity, we respectfully refer to Stacie and Edward Martinez by their first names.

and maintain the premises in a safe condition throughout their tenancy. They also asserted that contested material facts concerning whether Blake knew or had reason to know of an allegedly defective step precluded summary judgment.

¶4 After briefing and oral argument, the superior court found the Martinezes had failed to present any evidence that Blake "was aware of or suspected any unsafe condition needing repair." Given that finding, the court determined Blake did not breach the duty of care he owed as a landlord to his tenants.

¶5 The Martinezes moved for reconsideration, which the superior court denied. The court then entered final judgment in Blake's favor, awarding him, over objection, all requested costs ($5,496.64) but denying his application for attorneys' fees.

¶6 The Martinezes timely appealed and Blake timely cross-appealed. We have jurisdiction over this appeal under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21 and -2101(A)(1).

**DISCUSSION**

I. **Entry of Summary Judgment**

¶7 The Martinezes challenge the superior court's grant of summary judgment on their tort claims, asserting the court improperly invaded the province of a jury by making a *factual* determination that Blake did not breach the duty of care he owed them.[2] As part of their evidentiary argument, the Martinezes assert that the court improperly (1) disregarded their photographic evidence of the subject step, and (2) faulted them for failing to prove "what caused the step to fail" despite uncontroverted evidence that Blake "disposed of [the step] approximately one week after Stacie's injury."

---

[2] Notably, the Martinezes do not contest the superior court's summary judgment ruling on their claim for breach of the warranty of habitability. *See Torrez v. Knowlton*, 205 Ariz. 550, 552, ¶ 3 n.1 (App. 2003) (determining an appellant abandoned any argument that the superior court improperly granted summary judgment on one claim when, on appeal, appellant only challenged summary judgment on a different claim).

**¶8**          "We review *de novo* [a superior] court's application of the law and its determination whether genuine issues of material fact preclude summary judgment." *State Comp. Fund v. Yellow Cab Co. of Phx.*, 197 Ariz. 120, 122, ¶ 5 (App. 1999); *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). Summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); *see also Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 216 Ariz. 454, 457, ¶ 7 (App. 2007) ("For a claim or defense to withstand a motion for summary judgment and be presented to a jury, the proponent of the claim or defense must present evidence from which a reasonable jury could find, directly or by inference, that the probabilities favor the proponent.") (citation omitted). Under this standard, a "scintilla" of evidence that creates the "slightest doubt" about the facts is insufficient to preclude summary judgment, but "[i]f the evidence would allow a jury to resolve a material issue in favor of either party, summary judgment is improper." *Id.*

**¶9**          "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007); *see also McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 252, ¶ 22 (App. 2013) (explaining a plaintiff must put forward evidence establishing all the elements of actionable negligence to survive a motion for summary judgment on a premises liability claim); *Barnes v. Outlaw*, 192 Ariz. 283, 286 (1998) ("[B]ecause loss of consortium is a derivative claim, all elements of the underlying cause must be proven before the claim can exist.") (citation omitted). If a plaintiff fails to provide evidence to support each of these requisite elements, the defendant is entitled to summary judgment. *See Orme Sch.*, 166 Ariz. at 310 ("If the party with the burden of proof on the claim or defense cannot respond to the motion [for summary judgment] by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted.").

**¶10**          "Whether a duty is owed is a legal question decided by the court." *Grafitti-Valenzuela ex rel. Graffiti,* 216 Ariz. at 457, ¶ 8. A landlord owes a duty of reasonable care to inspect rental premises "*when he has reason*

*to suspect*" a defect exists at the time the tenant takes possession. *Piccola By & Through Piccola v. Woodall*, 186 Ariz. 307, 310 (App. 1996) (emphasis added) (quoting *Cummings v. Prater*, 95 Ariz. 20, 26 (1963)). This duty of care continues "throughout the lease period," requiring the landlord "to maintain [the] premises free from 'unreasonably dangerous' instrumentalities that could potentially cause injury." *McLeod By & Through Smith v. Newcomer*, 163 Ariz. 6, 8 (App. 1989) (quoting *Presson v. Mountain States Props., Inc.*, 18 Ariz. App. 176, 178 (1972)). Notably, actual knowledge of a dangerous condition is not required to trigger the duty; rather, "[t]he duty to inspect arises when the landlord '*has reason to suspect*' a defect." *Piccola By & Through Piccola*, 186 Ariz. at 311 (emphasis added) (citation omitted). In other words, mere "[i]nformation from which a reasonable person could infer that a dangerous condition exists is sufficient to impose liability." *Id.*; *see also Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 219 (App. 1987) (explaining the phrase "'reason to know' . . . denote[s] the fact that the actor has information from which a person of reasonable intelligence . . . would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists") (quoting Restatement (Second) of Torts § 12(1) (1965)).

¶11        Here, the superior court correctly found that Blake owed a continuing duty of care to the Martinezes throughout their tenancy. The question is whether the Martinezes presented admissible evidence substantiating their claim that Blake's conduct fell below (breached) that standard of care.

¶12        Determining whether a defendant acted reasonably under the circumstances usually involves "factual inquiries," which "are reserved for [a] jury." *Gipson*, 214 Ariz. at 144, ¶ 16. Nonetheless, summary judgment is "appropriate if no reasonable juror could conclude that the standard of care was breached." *Id.* at 143, ¶ 9 n.1. While foreseeability may not be used to determine whether a duty exists to a particular plaintiff, courts may consider foreseeability in assessing breach. *Id.* at 144, ¶¶ 16–17; *see also Grafitti-Valenzuela ex rel. Grafitti*, 216 Ariz. at 458, ¶ 14 ("The scope and nature of the conduct required to satisfy a duty to keep premises reasonably safe is limited to keeping them safe from . . . foreseeable harms.").

¶13        To support their contention that a genuine dispute of material fact concerning Blake's knowledge or reason to know of a step defect precluded summary judgment, the Martinezes rely on photographic evidence and deposition testimony they produced. We first consider the photographic evidence. Attached to their response in opposition to Blake's motion for summary judgment, the Martinezes submitted two

photographic exhibits labeled "Plaintiffs' Exhibit B Photograph Depicting Steps (Blake 000024)" and "Plaintiffs' Exhibit D Photograph of Step (Blake 000026)." In a supplemental response, the Martinezes attached another photographic exhibit labeled "Plaintiffs' Exhibit I Photograph of Broken Step." Blake objected to all three photographic exhibits as generally inadmissible and raised a specific objection to the "Photograph of Broken Step" exhibit, noting it was "not accompanied by an affidavit" and "lack[ed] foundation." Without outlining its reasoning, the superior court found the "Photograph of Broken Step" exhibit inadmissible. The court did not address Blake's objection to the other photographic exhibits or otherwise reference them in its summary judgment analysis.

¶14　　　　While we review a summary judgment ruling *de novo*, the superior court has discretion to determine the admissibility of evidence in a summary judgment proceeding. *See United Ins. Co. v. Lutz*, 227 Ariz. 411, 415, ¶ 19 (App. 2011) (citing *Mohave Elec. Coop. v. Byers*, 189 Ariz. 292, 301 (App. 1997)). "To be admissible, a photograph must be a reasonably faithful representation of the object depicted." *Lohmeier v. Hammer*, 214 Ariz. 57, 61, ¶ 8 (App. 2006). Although "the individual who took the photographs" need not verify their accuracy, a verifying witness must "attest that the photographs accurately portray the scene or object depicted." *Id*.

¶15　　　　Despite Blake's objections, the Martinezes failed to provide a verified statement from a witness attesting to the accuracy of the photographic exhibits. For the first time on appeal, they contend that the record nonetheless contains sufficient foundation for the photographs because counsel questioned Stacie and Blake about the photographs during their depositions. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived.").

¶16　　　　"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. 901(a). A proponent of evidence may satisfy foundation requirements with identification testimony of a witness who has knowledge of the exhibit. Ariz. R. Evid. 901(b)(1).

¶17　　　　Here, facing a challenge to the admissibility of their photographic evidence, the Martinezes needed to lay foundation for the exhibits, either by submitting a verified statement or, at a minimum, directing the court to the specific witness testimony they contend attested to the accurate portrayal of the photographs. They could not meet their

burden as the proponent of the evidence by simply remaining silent in the face of Blake's objections and relying on the superior court to comb through the record and piece together the portions of the deposition testimony relating to the exhibits. *See Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 10 (App. 2009) ("In deciding a motion for summary judgment, the [superior] court considers those portions of the verified pleadings, deposition, answers to interrogatories and admissions on file *which are brought to the court's attention by the parties*.") (emphasis in original, citation omitted). Given the Martinezes' failure to lay direct foundation for the photographic exhibits, despite repeated objections, the court did not abuse its discretion by disregarding their photographic evidence.

¶18          Moreover, the photographic evidence does not create a genuine dispute of material fact concerning notice. A photograph of the broken step, necessarily taken after Stacie sustained her injury, does not provide any evidence of pre-incident notice to Blake. Simply put, the disrepair reflected in the photograph of the broken step does not support the Martinezes' contention that Blake knew or should have known of a step defect. As to the photographs taken before the incident, Stacie testified that she inadvertently photographed the wooden steps while she attempted to photograph "other things," not because she suspected a defect. In fact, it is uncontroverted that the Martinezes had no notice of a step defect, either from the photographs or their repeated exposure to the appearance of the steps throughout their tenancy. While the pre-incident photographs arguably depict weathered steps, the Martinezes' unwavering contention that they had no notice of a step defect belies their characterization of the wooden stairs' condition before the incident as "visibly poor."

¶19          Turning to the deposition testimony, as noted, each party denied knowledge or notice of a step defect. Stacie testified that once she and Edward moved into the rental property, they placed a stationary gate across the top of the wooden stairs to pen in their dogs. With that barrier, she explained, they "didn't really use" the subject wooden steps other than while moving in and out of the rental property. Accordingly, they never discovered or reported any concerns about the wooden steps before she sustained her injury. When questioned about the day of the incident, Stacie recounted that she drove to the rental property and ascended the wooden steps to reach the front door. She denied hearing any unusual creaking or other noises suggesting buckling as she climbed up the stairs. After unlocking the front door, Stacie returned to the stairs and proceeded down the steps "when [her] foot went through" a stair and she "hit the ground."

¶20          Largely consistent with Stacie's testimony, Edward acknowledged that he and others used the wooden steps while moving out of the rental property. Like Stacie, Edward testified that he never noticed any unusual cracking or creaking during use of the wooden steps.

¶21          For his part, Blake denied any indication of a step defect before the incident. When asked whether he had ever repaired the steps before the incident, Blake responded, "I might have tightened in a screw or two" on the handrail, but he denied any repair work on the actual steps. When asked whether he had a duty to "routine[ly] inspect" the rental property, Blake testified that he believed landlords had such a duty and asserted that he fulfilled that duty by visually inspecting the property "[f]rom a distance," noting that both he and his mother lived in neighboring homes. Blake also testified that he used the wooden steps to reach the front entrance of the rental property when collecting rent from the Martinezes, stating "[t]here was nothing wrong" with the stairs when he used them.

¶22          Pointing to Blake's deposition testimony conceding that he had a duty to routinely inspect the rental property, independent of any knowledge or suspicion of a defect or dangerous condition, the Martinezes argue the issue of breach should have been submitted to a jury. But the scope of a landlord's duty is a question of law for the court, not a factual matter that may be determined by stipulation or party admissions. *See*, *e.g.*, *Word v. Motorola, Inc.*, 135 Ariz. 517, 520 (1983) ("Parties cannot stipulate as to the law applicable to a given state of facts and bind the court.") (citation omitted). To be clear, a landlord owes a duty of reasonable care to inspect rental premises *when he has reason to suspect a defect exists*, not as a regular course of procedure. *Piccola By & Through Piccola*, 186 Ariz. at 310 (citation omitted).

¶23          Equally unfounded is the Martinezes' contention that a reasonable jury could infer that Blake breached his duty to maintain the rental property in a safe condition because he failed to timely repair the septic tank on the premises when it backed up. The Martinezes have not cited any authority, and our research reveals none, holding that a landlord may be found liable for breaching his duty to maintain safe premises and cure dangerous defects, without knowledge or suspicion of a dangerous condition, because he had knowledge and failed to timely repair a different, *nondangerous* defect.

¶24          The evidence presented by the parties failed to establish any genuine dispute of material fact sufficient to withstand summary judgment. Considering the admissible evidence presented, no reasonable juror could

find that Blake knew of or had reason to suspect a step defect. *See Cummings*, 95 Ariz. at 31–32 ("These facts taken with the depositions, pleadings and affidavits show that no reasonable man could come to any conclusion other than that there was no issue of fact to be tried."). Because the Martinezes failed to present any evidence to establish breach, the superior court properly entered summary judgment in Blake's favor. Having determined, on this record, that no reasonable person could find that Blake knew of or had reason to suspect a defective step, we need not address the court's additional determination that the Martinezes failed to establish that the step was, in fact, defective.

## II.    Award of Costs

**¶25**        The Martinezes challenge the superior court's award of costs, contending that some of Blake's requested costs are not authorized under Arizona law. Specifically, the Martinezes contest the award of (1) $51.40 for meal costs incurred during out-of-town travel for depositions, (2) $304.33 for mileage costs incurred for travel to depositions ($150.93) and a court hearing ($153.40), (3) $1,485.34 for unspecified costs, "including travel," related to taking the Martinezes' depositions, (4) $150.00 for the services of a private investigator, (5) $378.99 for costs associated with obtaining medical records, (6) $35.50 for unknown process server costs, and (7) $2,885.00 for expert fees.

**¶26**        "By statute, a successful party to a civil action in Arizona is entitled to recover 'from his adversary all costs expended or incurred therein unless otherwise provided by law.'" *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 137, ¶ 15 (App. 2016) (quoting A.R.S. § 12-341). "But the statutes do not grant the prevailing party a right to recover every manner of litigation expense." *Id.* Instead, Arizona's cost recovery statute, A.R.S. § 12-332, limits recovery to taxable costs - "expenses incurred for witness fees, deposition expenses, certified copies, surety expenses, and other costs incurred pursuant to an agreement between the parties." *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 402, ¶ 6 (1999). We review *de novo* "[w]hether a particular expenditure qualifies as a taxable cost." *Reyes v. Frank's Serv. and Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014); *see also Ahwatukee Custom Ests. Mgmt. Ass'n, Inc.*, 193 Ariz. at 402, ¶ 7 (noting "the legislature clearly defined which categories of litigation expenses a prevailing party can recover from the opposing party" and "Arizona decisions reflect a consistent refusal to expand the definition of taxable costs beyond that provided by statute").

**¶27** Although Blake acknowledges that costs associated with private investigative services, medical records, and experts are not recoverable as enumerated taxable costs under A.R.S. § 12-332, he nonetheless contends that these costs are recoverable under the parties' rental agreement.

**¶28** We review *de novo* issues of contract interpretation. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). The rental agreement provides, in relevant part:

> If suit be brought to collect rent or damages, to cause eviction from said premises, or to collect the costs of repairs to or cleaning of said premises, *Resident* agrees to pay *all costs* of such action, including reasonable attorney fees as may be fixed by the court.

(Emphasis added.)

**¶29** Given a plain reading, the rental agreement requires the tenant to pay "all costs" incurred by the landlord in an action to collect rent, damages, repair, or cleaning expenses from the tenant. Blake contends that the provision also requires a tenant to pay "all costs" incurred by the landlord to defend against a tort claim or any other action brought by the tenant. Nothing in the express language of the lease agreement supports such an interpretation. Moreover, by its terms the lease agreement purports to require the tenant to pay "all costs" incurred in litigation with the landlord irrespective of which party prevails. We will not construe the contract in a manner leading to such an absurd result. *See Roe v. Austin*, 246 Ariz. 21, 27, ¶ 17 (App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result."). Because the lease agreement does not provide for an award of costs in a tort action brought by the tenant, it does not authorize an award of costs here, and Blake may not recover litigation expenses as costs without statutory authorization. *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc.*, 193 Ariz. at 402, ¶ 6.

**¶30** While A.R.S. § 12-332 "does not specify which litigation expenses are taxable as costs of taking depositions," appellate courts "have construed the statute as permitting the recovery of fees for the court reporter and transcripts, reasonable travel expenses for attorneys and court reporters attending the deposition, and costs of copies of deposition transcripts." *Reyes*, 235 Ariz. at 608–09, ¶¶ 8–14 (internal quotation omitted) (upholding the characterization of travel expenses incurred by attorneys attending out-of-town depositions, whether in-state or out-of-state, as

taxable costs – including mileage expenses). Additionally, "a party may recover costs it incurs in deposing an opposing party's expert witness," but "the fees it pays its own expert witness are not recoverable." *RS Indus., Inc.*, 240 Ariz. at 137, ¶ 16.

¶31        Applying A.R.S. § 12-332 here, Blake's expenses for out-of-town meals, travel to court hearings, investigative services, medical records, and his own experts are not recoverable as taxable costs. The $35.50 service of process fee, however, is recoverable as a cost of "officers and witnesses" under A.R.S. § 12-332(A)(1). Likewise, expenses for depositions are generally recoverable, including travel, but here, Blake largely failed to itemize any of those costs ($1,485.34), or otherwise substantiate his request. Accordingly, we vacate the superior court's award of costs and remand to the court to determine the appropriate taxable costs consistent with this decision.

### III.    Denial of Attorneys' Fees Request

¶32        Blake cross-appeals the superior court's denial of his request for attorneys' fees. He contends the court improperly found the case "sound[ed] in tort and did not arise under the contract between the parties."

¶33        First, Blake argues he "is entitled to attorneys' fees under the express terms of the lease [agreement]." As noted, *supra* ¶ 29, the plain language of the lease agreement provides for an award of attorneys' fees and costs only in actions *brought by the landlord against the tenant* to collect rent or damages, to cause eviction from the leased premises, or to collect the costs of repairs or cleaning of the leased premises. Contrary to Blake's contention, the lease agreement does not authorize, much less mandate, an attorneys' fees award in an action brought by a tenant.

¶34        Second, Blake asserts he "is entitled to attorneys' fees under A.R.S. § 12-341.01." Under A.R.S. § 12-341.01(A), a court *may* award reasonable attorneys' fees to the successful party in "any contested action arising out of a contract." "Whether a cause of action arises out of contract is a question of law we review *de novo*." *Caruthers v. Underhill*, 230 Ariz. 513, 526, ¶ 58 (App. 2012).

¶35        To determine whether a claim arises out of contract, we consider "the nature of the action and the surrounding circumstances." *Marcus v. Fox*, 150 Ariz. 333, 335 (1986) (citation omitted). A tort claim arises out of contract "only when the tort could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15, ¶ 27 (App. 2000); *see also Sparks v. Republic Nat. Life Ins. Co.*, 132

Ariz. 529, 543 (1982) ("The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under [A.R.S.] § 12-341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

¶36        Here, Blake contends he is entitled to an attorneys' fees award because the Martinezes could not have brought their tort action but for the lease agreement. Without question, the lease agreement provided the foundation for the parties' relationship, but to qualify for an award of attorneys' fees under A.R.S. § 12-341.01, that "contract must be the essential basis of the action and not merely a factual predicate." *Caruthers*, 230 Ariz. at 526, ¶ 57.

¶37        In a tort action alleging a breach of a duty either implied by law or based on statute—*a duty other than that imposed by contract*—the claim does not arise out of contract for purposes of A.R.S. § 12-341.01(A). *Id*. In other words, an action arises out of contract only when the contract serves as the "essential basis of the action," creating a duty of care that would not exist but for the contract. *Id.*

¶38        In this case, the lease agreement provided the factual predicate for the cause of action, but the Martinezes' tort claims flowed out of Blake's common law and statutory duties to maintain the leased premises in a safe manner, *see* A.R.S. § 33-1324 (requiring a landlord to make any necessary repairs and maintain leased premises in a clean and safe condition unless the parties specifically "agree in writing, supported by adequate consideration, that the tenant perform the landlord's duties"), not from any duty imposed by contract. In fact, the lease agreement imposes no duty of care on the landlord; instead, it imposes obligations only on the tenants. Likewise, "[A.R.S. §] 12-341.01(A) is not applicable to a breach of implied warranty of . . . habitability claim." *Sullivan v. Pulte Home Corp.*, 231 Ariz. 53, 62, ¶ 49 (App. 2012), *vacated in part on other grounds by* 232 Ariz. 344, 347, ¶ 15 (2013). Accordingly, Blake is not eligible for an award of attorneys' fees under A.R.S. § 12-341.01 for successfully defending against the Martinezes' claims.

## CONCLUSION

¶39        For the foregoing reasons, we affirm the superior court's grant of summary judgment and denial of Blake's request for attorneys' fees but vacate its award of costs and remand for a redetermination of costs consistent with this decision. Blake requests his attorneys' fees and costs on appeal under A.R.S. §§ 12-341, -341.01, and -342. We deny his request.

Because each side prevailed in part, the parties shall bear their own costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA