167 P.3d 711

Tiana Marie **GRAFITTI–VALENZUELA,** by and through her parent and legal guardian, Marie **GRAFITTI,** Plaintiff/Appellant,

v.

**CITY OF PHOENIX, a political subdivision of the State of Arizona,** Defendant/Appellee.

No. 1 CA–CV 06–0557.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 27, 2007.

---

Rake & Catanese P.C. By David J. Catanese, Phoenix, Attorneys for Plaintiff/Appellant.

Jones, Skelton & Hochuli PLC By Georgia A. Staton, Eileen Dennis GilBride, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BARKER, Judge.

¶ 1 Plaintiff–Appellant Tiana Marie Grafitti–Valenzuela, by and through her parent and legal guardian Marie Grafitti, appeals from the trial court's summary judgment in favor of Defendant–Appellee City of Phoenix on Tiana's claim for negligence arising out of injuries Tiana sustained when she was abducted from a City bus stop. For the following reasons, we affirm.

### Facts and Procedural History[1]

¶ 2 At approximately 7 a.m. on January 6, 2003, eleven-year-old Tiana was waiting for a City bus at a City bus stop located at 35th Avenue and Acoma in Phoenix, Arizona (the "Bus Stop"). John Mathews, II, abducted Tiana from the Bus Stop and held her in his home for twenty-four hours while he repeatedly sexually assaulted her.

¶ 3 On September 29, 2004, Tiana filed a complaint against the City alleging that the City had negligently designed and constructed the Bus Stop, otherwise failed to make the Bus Stop safe, and failed to protect and warn Tiana against the foreseeable criminal acts of third parties at the Bus Stop. The City moved for summary judgment on the basis that Tiana could not establish (1) that the

---

**1.** On an appeal from summary judgment, we state the facts in the light most favorable to Tiana, the party against whom the court entered judgment. *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

City owed Tiana any duty of care, (2) that the City had breached any alleged duty of care it owed Tiana, and (3) that any alleged breach of duty caused Tiana's injuries. The trial court granted the City's motion, ruling that there was no question of material fact for the jury on the issues of duty and breach because Tiana's abduction and sexual assault were unforeseeable as a matter of law. The court also ruled that Mathews' criminal acts were an intervening, superseding cause of Tiana's injuries.

¶ 4 Tiana timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

### Discussion

¶ 5 On appeal, Tiana asserts that the trial court erred by granting summary judgment in favor of the City because the City had a duty to remedy and/or warn Tiana regarding the Bus Stop's dangerous condition and because Mathews' criminal acts were not an intervening, superseding cause of Tiana's injuries. In addition, Tiana argues that a material question of fact exists regarding whether the City breached the duty of care it owed to Tiana.

¶ 6 To establish the City's negligence, Tiana was required to prove: (1) the existence of a duty recognized by law requiring the City to conform to a certain standard of care; (2) the City's breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (citing William L. Prosser, *Handbook of the Law of Torts* § 30, at 143 (4th ed.1971)); *Piccola By and Through Piccola v. Woodall,* 186 Ariz. 307, 309, 921 P.2d 710, 712 (App.1996). Tiana argues that the trial court erred by granting summary judgment in favor of the City because, as a matter of law, the City had a duty to keep the Bus Stop reasonably safe for users such as Tiana and to warn her and her mother about the dangerous condition of the Bus Stop. She argues that material questions of fact exist regarding whether the City breached that duty of care. In addition, Tiana asserts that the City's breach of its duty was the proximate cause of Tiana's injuries and

that Mathews' criminal acts were not a superseding cause.

¶ 7 A court may grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). Summary judgment should be granted, "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Consequently, a "scintilla" of evidence or evidence creating the "slightest doubt" about the facts may still be insufficient to withstand a motion for summary judgment. *Id.* For a claim or defense to withstand a motion for summary judgment and be presented to a jury, the proponent of the claim or defense must present evidence from which a reasonable jury could find, directly or by inference, that the probabilities favor the proponent. *Id.* at 310, 802 P.2d at 1009. If the evidence would allow a jury to resolve a material issue in favor of either party, summary judgment is improper. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

### A. Duty

¶ 8 Whether a duty is owed is a legal question decided by the court. Public policy may support the recognition of a duty of care. *Gipson v. Kasey,* 214 Ariz. 141, 145, ¶ 23, 150 P.3d 228, 232 (2007). And, a duty of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant. *Id.* at ¶ 18; *see also Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985), *superseded on other grounds by statute,* A.R.S. § 33–1551 (2000), *as recognized in Wringer v. United States,* 790 F.Supp. 210, 212 (D.Ariz.1992); *Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (stating the concept of "duty" applies to a "relation between individuals which imposes upon one a legal obligation for the benefit of the other") (quoting W. Prosser & W. Keeton, *The Law of Torts* § 53, at 356 (5th

ed.1984)). A duty exists if the "relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz*, 146 Ariz. at 356, 706 P.2d at 368.

¶ 9 It is well established under Arizona law that a municipality, such as the City, has a duty to keep its sidewalks and streets reasonably safe for users. *Beach v. City of Phoenix*, 136 Ariz. 601, 602, 667 P.2d 1316, 1317 (1983) (stating defendant city owed a duty to "keep its streets and sidewalks reasonably safe for travel by the public") (internal citation omitted); *Coburn*, 143 Ariz. at 52, 691 P.2d at 1080 (stating that a municipality is "under an obligation for the benefit of those who use the public streets" and holding that the defendant city had a duty to keep its streets reasonably safe for travel); *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶ 10, 953 P.2d 168, 170 (1998) (stating, "a municipality owes a duty to the public to keep its streets in a reasonably safe condition"). We see no reason that this same standard of care should not govern the City's conduct with respect to City bus stops and therefore hold that it does.

¶ 10 Nevertheless, the City maintains, and the trial court held, that the City had no duty to take any action to prevent Mathews' attack on Tiana because there had been no prior crimes at the Bus Stop, and Mathews' crime was therefore unforeseeable as a matter of law, thus relieving the City of any duty to protect Tiana from Mathews. The Arizona Supreme Court recently rejected a similar argument, clarifying that under Arizona law, "foreseeability is not a factor to be considered by courts when making determinations of duty." *Gipson*, 214 Ariz. at 144, ¶ 15, 150 P.3d at 231.

¶ 11 Accordingly, we determine as a matter of law that the City owed Tiana, as a user of the Bus Stop, a duty to keep the Bus Stop reasonably safe for Tiana's use.

## B. Breach

¶ 12 The existence of a duty must not be confused with the details of the conduct required to satisfy the duty. *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367. While the duty the City owed Tiana remained constant, the acts necessary to fulfill it vary depending upon the circumstances. *Beach*, 136 Ariz. at 603, 667 P.2d at 1319. The question in this case is whether the City's conduct, as a matter of law, was reasonable and thus adequate to satisfy its duty to Tiana. The City contends that, as a matter of law, the jury could not have found that the City breached any duty it owed to Tiana because there was no evidence of any previous criminal activity at the Bus Stop and therefore the harm Tiana complains about came from an unforeseeable event. Tiana asserts, however, that the City was aware that crimes had occurred at bus stops throughout the City and that whether this knowledge required the City to do more to keep her safe from crime at the Bus Stop was a question of fact for the jury.

¶ 13 Whether a defendant has exercised the care required to satisfy its duty is generally a question of fact for the jury. *Walker v. Montgomery Ward & Co., Inc.*, 20 Ariz.App. 255, 258, 511 P.2d 699, 702 (1973). However, we may rule as a matter of law when "no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct." *Gipson*, 214 Ariz. at 143 n. 1, ¶ 9, 150 P.3d at 230 n. 1; *see also Markowitz*, 146 Ariz. at 357–58, 706 P.2d at 369–70; *Coburn*, 143 Ariz. at 53, 691 P.2d at 1081; *Rogers By and Through Standley v. Retrum*, 170 Ariz. 399, 403, 825 P.2d 20, 23 (App.1991) (noting that, "in approaching the question of negligence or unreasonable risk, 'the courts set outer limits. A jury will not be permitted to require a party to take a precaution that is clearly unreasonable ....'" (quoting 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 15.3, at 355–57 (2d ed.1986))).

¶ 14 The scope and nature of the conduct required to satisfy a duty to keep premises reasonably safe is limited to keeping them safe from those harms that are foreseeable harms. *Martinez v. Woodmar IV Condominiums Homeowners Ass'n, Inc.*, 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997) (stating, "the type of foreseeable danger did not dictate the existence of duty but only the nature and extent of the conduct necessary

to fulfill the duty"). The City maintains that there is no evidence from which a reasonable jury could conclude that Mathews' criminal acts were the type of foreseeable harm from which the City was bound to protect Tiana. However, "the reckless or criminal nature of an intervenor's conduct does not place it beyond the scope of a duty of reasonable care if that duty entails foresight and prevention of precisely such a risk." *Rogers,* 170 Ariz. at 401–02, 825 P.2d at 22–23; *see also* Restatement (Second) of Torts ("Restatement") § 281 cmt h (1965) ("If the duty is designed, in part at least, to protect the other from the hazard of being harmed by the intervening force, or by the effect of the intervening force operating on the condition created by the negligent conduct, then that hazard is within the duty . . . ."). This does not mean, however, that the City is required to take every precaution possible to prevent crime; the City is only required to act reasonably under the circumstances. *Rogers,* 170 Ariz. at 402, 825 P.2d at 23; *Martinez,* 189 Ariz. at 210–11, 941 P.2d at 222–23 (stating that the circumstances dictate what conduct is reasonable to protect others from foreseeable and preventable danger).

¶ 15 Tiana alleges that the City breached its duty by failing to install a protective shelter and increased lighting at the Bus Stop. In this case, the Bus Stop was in a low crime area, and there was no history of any criminal conduct occurring at the Bus Stop. If the City was required to install additional amenities under such circumstances, it would be required to install those amenities at virtually every City bus stop in an attempt to prevent all crime at those locations. This is not what the law requires. *Martinez,* 189 Ariz. at 210–11, 941 P.2d at 222–23 (stating premises owner must only do what is reasonable and is not an insurer of safety).[2] Under the circumstances of this case, where there was no evidence that prior crimes had occurred at the Bus Stop, a reasonable jury could not find that the City breached the duty of care it owed Tiana because it did not install a $10,000 shelter and lighting at the Bus Stop. *Gipson,* 214

Ariz. at 143 n. 1, ¶ 9, 150 P.3d at 230 n. 1; *cf. Martinez,* 189 Ariz. at 212, 941 P.2d at 224 (holding summary judgment was inappropriate because defendant knew of gang incursions involving drugs and other criminal acts and could have taken reasonable precautions against harm).

¶ 16 Tiana also contends that the City negligently failed to warn her and her mother about the dangerous nature of the Bus Stop and the lack of crime prevention. Tiana's mother, Marie, avowed that she would not have allowed Tiana to walk to the Bus Stop and wait alone if the City had given her this warning. However, Marie testified that she escorted Tiana to the Bus Stop before Tiana began waiting alone at the Bus Stop and observed that the Bus Stop consisted only of a pole with a bus stop sign. She was therefore aware that the Bus Stop lacked a shelter and bright illumination, amenities that she may have regarded as safety features. *Black v. State,* 116 Ariz. 234, 239, 568 P.2d 1132, 1137 (App.1977) (stating there is no duty to warn against known dangers and holding law enforcement officers could not be liable for failing to warn of hazardous road conditions known to injured driver).

¶ 17 Moreover, there is no evidence that any crime had previously occurred at the Bus Stop, about which the City might have warned Tiana and Marie. We reject Tiana's argument that the City nevertheless should have warned Tiana and Marie that crime had previously occurred at other City bus stops and breached its duty of care by failing to do so. The evidence in the record shows that crime occurs at City bus stops no more frequently than it occurs anywhere else in the City. If the City were required to warn Marie about such a risk, it would be tantamount to requiring the City to warn each and every rider or their parent or guardian that crime exists in the City. Again, this is not what the law requires. *See Randolph v. Ariz. Bd. Of Regents,* 19 Ariz.App. 121, 123, 505 P.2d 559, 561 (1973) ("No person can be insulated against all the risks of living."). We thus hold as a matter of law that the City did not

---

**2.** Moreover, the City offered uncontested evidence that it does not install bus stop amenities as security devices, but rather, for the comfort and convenience of bus riders.

breach the duty of care it owed to Tiana by failing to warn her or Marie that crime had occurred at City bus stops and that the Bus Stop lacked amenities such as a shelter and a light.

¶ 18 We find no error in the trial court's ruling as a matter of law that the City did not breach its duty to Tiana. Although this holding could conclude our analysis, we proceed as there are additional bases to affirm the trial court.

## C. Causation

¶ 19 Tiana also argues that the City's failure to install a light and shelter at the Bus Stop proximately caused her abduction because the absence of these security measures made the Bus Stop unsafe for riders, including Tiana.[3]

■■■■■ ¶ 20 To establish a prima facie case of negligence, a plaintiff must show that the defendant's negligent acts were the proximate cause of the plaintiff's injuries. *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 10, 86 P.3d 954, 958 (App.2004).

A plaintiff proves proximate cause, also referred to as legal cause, by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred.

*Id.* at 378, ¶ 11, 86 P.3d at 958.

■■■■■ ¶ 21 However, "negligence is not actionable in the abstract." *Sabina v. Yavapai County Flood Control Dist.*, 196 Ariz. 166, 171, ¶ 20, 993 P.2d 1130, 1135 (App. 1999). A defendant's acts are the proximate cause of a plaintiff's injury only if they are a substantial factor in bringing about the harm. *Barrett*, 207 Ariz. at 381, ¶ 26, 86 P.3d at 961; Restatement § 431 (1965). The mere possibility of causation is not enough. *Butler v. Wong*, 117 Ariz. 395, 396, 573 P.2d 86, 87 (App.1977); *see also Badia v. City of*

*Casa Grande*, 195 Ariz. 349, 357, ¶ 29, 988 P.2d 134, 142 (App.1999) ("Sheer speculation is insufficient to establish the necessary element of proximate cause or to defeat summary judgment."). A plaintiff must show at trial that the injury would not have occurred "but for" the defendant's negligent conduct. *Ontiveros*, 136 Ariz. at 505, 667 P.2d at 205; *Rogers*, 170 Ariz. at 401, 825 P.2d at 22 (stating "causation-in-fact" is required to find proximate cause). This is true even if the defendant's conduct contributed "only a little" to the plaintiff's injuries. *Ontiveros*, 136 Ariz. at 505, 667 P.2d at 205. On summary judgment, the plaintiff must at least create a question of fact in this regard.

¶ 22 In *Shaner v. Tucson Airport Authority, Inc.*, we discussed the evidence necessary to establish a reasonable causal connection in a case involving the criminal acts of a third party. 117 Ariz. 444, 573 P.2d 518 (App. 1977). In that case, Leesa Shaner was abducted from a parking lot at the Tucson airport and murdered. 117 Ariz. at 446, 573 P.2d at 520. Her husband, Gary Shaner, sued the airport, alleging that it had negligently lit and secured the parking lot. *Id.* at 447–48, 573 P.2d at 521–22. In support of his claim, Shaner offered the testimony of a security expert that inadequate lighting and security caused Leesa's kidnapping and death. *Id.* at 448, 573 P.2d at 522. We rejected this testimony as speculative and not a proper subject of expert testimony because it did not require special knowledge and would have invaded the jury's province. *Id.* We held, "[Shaner's] evidence shows at most, a possibility that the inadequate lighting and security was a substantial factor in bringing about Leesa's abduction, but does not rise to the level of a reasonable probability." *Id.*

¶ 23 The California Court of Appeal also addressed the proof necessary to establish causation in a case involving a third-party criminal act in *Constance B. v. State of California*, 178 Cal.App.3d 200, 223 Cal.Rptr. 645 (1986). In that case, the plaintiff was as-

---

**3.** Tiana also contends that the City's negligent failure to warn her and her mother about the dangerous nature of the Bus Stop and the lack of crime prevention proximately caused her injuries. Because we have determined that the City

did not breach its duty to Tiana by failing to warn her or Marie about the lack of a shelter and lighting at the Bus Stop or about crime in the City, we need not reach this issue.

saulted in a roadside rest area built and maintained by the State. *Id.* at 204, 223 Cal.Rptr. 645. She alleged the State provided an opportunity for misconduct by a third party because the placement of lights and trees at the rest area caused heavy shadows at night. *Id.* at 211, 223 Cal.Rptr. 645. In support of her allegations, she offered testimony that the lighting conditions at the rest area created a risk of injury. *Id.* at 211, 223 Cal.Rptr. 645. The court rejected plaintiff's argument, ruling that a reasonable jury could not find that insufficient illumination was the proximate cause of plaintiff's harm because the evidence showed that her assailant made no effort to conceal himself, and was, in fact, standing in the light at the rest stop. *Id.* at 211–12, 223 Cal.Rptr. 645. The court further stated,

> Nor are we persuaded that the matter should go to the jury on the vague supposition that, notwithstanding that the assailant was standing in the light, even brighter lights might have deterred the assault. This theory has nothing to do with the creation of an opportunity to commit a crime by providing a place of concealment. It is premised on the notion that the assailant's psychological propensity for crime is affected by the quantity of light. It is a theory of mood lighting. If liability may be premised solely on this notion, proprietors will become the insurers of the safety of persons on their premises, subject only to the caprice of particular juries.

*Id.* at 212, 223 Cal.Rptr. 645. The court ruled as a matter of law that the lighting condition of the rest area was not a proximate cause of plaintiff's assault. *Id.*[4]

■ ¶ 24 In this case, Tiana's criminal analyst, Dan Vogel, opined that Mathews was a career criminal and sexual predator who looked for low light conditions to execute his crimes. Because Mr. Vogel never spoke to Mathews and admittedly did not know what

Mathews was thinking, he based his opinions on an analysis of Mathews' crimes, his training and experience with rape investigations, and his research regarding criminal characteristics.

¶ 25 Tiana's security expert, E. Dwayne Tatalovich, testified that if the City had provided a shelter and adequate lighting at the Bus Stop, Mathews would not have abducted Tiana. He opined that the shelter would have contained the illumination, thereby providing those in the vicinity of the Bus Stop with a greater ability to see inside the shelter. Mr. Tatalovich also did not interview Mathews, and in reaching his opinion that Mathews would have been deterred by a shelter and greater illumination at the Bus Stop, Mr. Tatalovich relied upon Mr. Vogel's conclusion that Mathews was a deterrable rapist.

¶ 26 However, there is no basis in the facts to infer that Mathews attacked Tiana because he could conceal himself at the Bus Stop and would not have abducted her otherwise. Indeed, Mathews spoke to Tiana before he approached her, causing her to turn toward him and observe him at the Bus Stop before he assailed her, and he was undeterred by the presence of three nearby teenagers who witnessed the abduction. In addition, the record reveals that Mathews subsequently attacked another victim in brighter light than existed at the Bus Stop.

¶ 27 Mr. Tatalovich also opined that Mathews could not have approached Tiana in the same manner if a shelter had been present and therefore would not have committed the crime. However, the evidence was that Tiana saw and spoke to Mathews and then turned away from him, giving him the opportunity to approach her from behind, not that he was able to surprise her from behind because of the lack of a protective shelter.

¶ 28 Based upon these facts, there is no indication that Mathews made use of the low lighting conditions or lack of a shelter at the

---

4. *See also Nola M. v. Univ. of S. Cal.,* 16 Cal. App.4th 421, 20 Cal.Rptr.2d 97, 108 (1993) (holding that defendant's failure to deter a physical assault in an open area was not the proximate cause of the attack and stating, "to characterize a landowner's failure to deter the wanton, mindless acts of violence of a third person as the 'cause' of the victim's injuries is (on these facts)

to make the landowner the insurer of the absolute safety of everyone who enters the premises"); *Noble v. L.A. Dodgers, Inc.,* 168 Cal.App.3d 912, 917, 214 Cal.Rptr. 395 (1985) (stating that a plaintiff must do more than simply critique a defendant's security measures or compare them to some abstract standard espoused by the plaintiff's security expert).

Bus Stop or would not have committed the abduction if the City had provided a shelter and greater lighting at the Bus Stop. Both Vogel's and Tatalovich's testimony to that effect is nothing more than speculation. *Shaner*, 117 Ariz. at 448, 573 P.2d at 522. Based on the undisputed material facts in this case, a reasonable jury could not find that Mathews would not have abducted Tiana if the City had installed a light and a shelter at the Bus Stop. *Constance B.*, 178 Cal. App.3d at 211–12, 223 Cal.Rptr. 645.[5]

¶ 29 The trial court further ruled that Mathews' criminal acts constituted a superseding cause of Tiana's injuries that relieved the City of liability. "The basic issue of intervening and superseding causes is whether a defendant 'is to be held liable for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which he is not responsible.'" *Ontiveros*, 136 Ariz. at 505–06, 667 P.2d at 205–06 (quoting W. Prosser, *Handbook on the Law of Torts* § 44, at 270 (4th ed.1971)). To constitute a superseding cause relieving a defendant of liability, the intervening event must have been unforeseeable by a reasonable person in the position of the defendant and, when looking back after the event, the intervening event must appear extraordinary. *Ontiveros*, 136 Ariz. at 506, 667 P.2d at 206. In this case, because we determine as a matter of law that the City's conduct was not a cause-in-fact of Tiana's injuries, we need not determine whether Mathews' conduct would constitute a superseding cause that would otherwise relieve the City of liability.

### Conclusion

¶ 30 For the foregoing reasons, we affirm.

CONCURRING: PARTICIA K. NORRIS, Presiding Judge and JON W. THOMPSON, Judge.

---

5. Tiana's urban planning expert, Anastasia Loukaitou–Sideris, testified that the Bus Stop's design invited crime because it was not close enough to commercial establishments, did not have lighting that eliminated all shadows, and did not have an emergency phone. Ms. Sideris did not opine, however, that such design elements would have prevented Mathews' attack on Tiana.