NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HARIANTO HARIANTO, et al., *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0446
FILED 9-24-2020

Appeal from the Superior Court in Maricopa County
No. CV 2015-051925
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Zachar Law Firm, Phoenix
By Christopher J. Zachar
*Co-Counsel for Plaintiffs/Appellants*

The Leader Law Firm, Tucson
By John P. Leader
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By G. Michael Tryon
*Co-Counsel for Defendants/Appellees*

Fennemore Craig PC, Phoenix
By Douglas C. Northup, Philip L. Brailsford
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

¶1        Appellant Harianto and several of his family members (collectively, "Harianto") were involved in a head-on collision with a wrong-way driver on I-17 in Yavapai County.  Harianto filed suit against the State of Arizona ("the State"), alleging the Arizona Department of Transportation ("ADOT") and the Department of Public Safety ("DPS") were negligent.  The superior court granted summary judgment in favor of the State on all claims.  In this memorandum decision, we address whether Harianto's negligence theory against ADOT fails for lack of causation, whether qualified immunity applies to DPS officers involved in responding to the wrong-way driver incident, and whether Harianto properly presented a claim that DPS failed to properly train its dispatchers.  In a separate opinion, we address whether statutory qualified immunity applies to Harianto's claim that the dispatchers were negligent in coordinating the emergency response.  For the following reasons, we affirm.

**BACKGROUND**

¶2        The relevant facts are undisputed.  Alan Horan ("Horan") was spotted before dawn one morning driving north in the southbound lanes of I-17 in northern Maricopa County.  Southbound motorists began calling 911 at 4:05 a.m.  Callers described Horan as driving lock-armed, staring straight ahead as if in a trance, unaware of the hazard he was creating.  While receiving these calls, DPS dispatchers alerted officers to respond to the wrong-way driver emergency, which had been automatically classified as the "highest priority-type call."  During the emergency, law enforcement officers responded to the alerts at various locations.

¶3        As Horan approached the boundary between Maricopa and Yavapai counties, the dispatcher taking the lead in handling the calls

contacted the Flagstaff dispatch office, which in turn notified DPS troopers in Yavapai County about Horan. Trooper Schmidt, who was driving south on I-17 several miles north of Horan's last known location, received the call about Horan from Flagstaff dispatch at 4:22 a.m. Schmidt initiated a traffic break to slow and eventually stop the southbound traffic with the goal of preventing southbound motorists from colliding with Horan's vehicle. Once the traffic was stopped, Schmidt intended to use his patrol car as a barrier between Horan and the southbound motorists.

**¶4** At around 4:27 a.m., however, a few miles south of where Schmidt had started the traffic break, Horan's car collided head on with Harianto's minivan, killing three passengers in the minivan and seriously injuring another two passengers and the drivers of both vehicles. Horan had traveled at least 21 miles on I-17 in the wrong direction before the collision. Police could not determine exactly how, when, or why Horan began driving the wrong direction, but investigators speculated he may have been experiencing medical issues.

**¶5** Harianto sued the State, alleging that through its agencies, the State was negligent in (1) failing to take appropriate measures, including providing reasonable warnings to prevent wrong-way driving and related accidents, and (2) failing to adopt or implement any law enforcement standards to prevent such accidents. Harianto also alleged the State knew or should have known that wrong-way incursions were occurring on a regular basis on Arizona's highways and that fatal collisions caused by wrong-way drivers had been increasing in recent years.

**¶6** Following substantial discovery, the State moved for summary judgment, arguing that (1) absolute immunity barred Harianto's allegation that the State was negligent for failing to adopt wrong-way driver policies and (2) statutory qualified immunity precluded the alleged negligence related to DPS's response. The State also asserted that regardless of immunity, Harianto failed to establish an applicable standard of care, breach, or causation. Harianto countered in part that DPS was subject to liability based on Schmidt's response to the Horan emergency. The superior court granted the State's motion. Harianto unsuccessfully moved for reconsideration, and this timely appeal followed.

## DISCUSSION

**¶7** We review the superior court's grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11

(2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We will affirm the court's disposition if we conclude it is correct for any reason. *Hawkins v. State Dep't of Econ. Sec.*, 183 Ariz. 100, 103 (App. 1995).

### A. Causation

**¶8** Harianto argues the superior court erred in granting summary judgment because the State, through ADOT, was negligent in failing to adopt wrong-way driver prevention measures, and its failure to adopt such measures was the cause of the accident. To establish a claim of negligence against ADOT based on its lack of policies and procedures, Harianto was required to show: (1) the existence of a duty that required conformity to a certain standard of care, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). Although not specifically addressed by the superior court, we conclude causation is lacking and thus we do not address the remaining elements of negligence.

**¶9** Causation has two subparts: (1) actual or factual causation, and (2) proximate or legal causation. *Dupray v. JAI Dining Services (Phoenix), Inc.*, 245 Ariz. 578, 583, ¶ 17 (App. 2018). Actual causation "exists if the defendant's act helped cause the final result and if that result would not have happened without the defendant's act." *Oniveros v. Borak*, 136 Ariz. 500, 505 (1983). This is true even if the negligent act contributed "only a little" to the injury. *Id.* Proximate causation exists when the defendant's acts are a "substantial factor" in the injury. *Barrett v. Harris*, 207 Ariz. 374, 381, ¶ 26 (App. 2004). If the substantial factor test is met, actual causation is sufficient to establish proximate cause unless an extraordinary unforeseeable intervening event occurs. *Dupray*, 245 Ariz. at 583, ¶ 17. Thus, the "proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990) (citation omitted).

**¶10** Proximate cause is usually a jury question. *McMurty v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 256, ¶ 38 (App. 2013). However, "[s]heer speculation is insufficient to establish the necessary element of proximate cause or to defeat summary judgment." *Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999). This is especially so if parties rely on conjectural or conclusory expert opinions. *See id.*

¶11 For example, in *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 216 Ariz. 454, 460, ¶19–20 (App. 2007), the plaintiff was abducted from a city bus stop and sexually assaulted. *Id*. at 456, ¶ 2. Plaintiff sued on the theory that the city negligently failed to provide protective shelter and proper lighting at the bus stop. *Id*. at 459, ¶ 15. The plaintiff's expert opined that if the city had taken such action, the plaintiff would not have been abducted. *Id*. at 461, ¶ 25. We rejected this opinion as speculative, finding "no basis in the facts" to infer that the plaintiff's injuries could have been prevented by such measures. *Id*. at ¶ 26. We therefore affirmed the superior court's grant of summary judgment to the city. *Id*. at 456, ¶ 1.

¶12 In this case, Harianto submitted expert opinion evidence from Dr. Robert Bleyl ("Bleyl"), a traffic engineer, asserting that if ADOT would have undertaken more robust wrong-way driver mitigation efforts, it is likely the accident would have been avoided. Bleyl, however, did not base his opinion on the facts and circumstances of this case, but rather on conclusions drawn from general statistics and evidence from other states, particularly California. He opined that because California had adopted wrong-way countermeasures and experienced a decrease in the number of wrong-way driving incidents, then the same would likely be true in Arizona. Bleyl did not analyze any particular stretch of roadway connected with the accident in evaluating whether ADOT was liable. Indeed, nothing in Bleyl's testimony indicates that Horan could have been stopped by warning signs or other measures because it is unclear how, why, or where Horan began driving the wrong direction. It is also unclear whether Horan was even lucid during the incident and capable of understanding and complying with any such warnings. Bleyl's unsupported opinion does not provide any reasonable basis to infer that Horan entered the roadway and drove the wrong way because the State failed to adopt and implement further measures to prevent wrong-way driving in general.

¶13 In sum, Bleyl's testimony is merely speculative and therefore legally insufficient to create a material question of fact as to whether ADOT's efforts, or the lack thereof, were a substantial factor in causing Harianto's injuries. *See Grafitti*, 216 Ariz. at 460, ¶¶ 20–21; *Shaner v. Tucson Airport Auth., Inc.*, 117 Ariz. 444, 447–48 (App. 1997) (finding that when causation was based on a chain of inferences only, "the jury would be left to sheer speculation on the issue"); *cf. Badia*, 195 Ariz. at 357, ¶¶ 29–30 ("Expert opinions, without more, do not necessarily render a plaintiff's allegations of gross negligence triable issues of fact. That is particularly so when, as here, the expert's opinions on the issues of . . . causation are largely conjectural and conclusory."). A reasonable jury could not infer that ADOT's actions were the cause of the accident. Accordingly, we need not

address whether Horan's driving was a superseding cause that would also relieve the State of liability. *See Grafitti*, 216 Ariz. at 462, ¶ 29.

**¶14** The superior court properly granted summary judgment on Harianto's claim that ADOT was negligent in failing to take reasonable measures to prevent wrong-way driving accidents.[1]

## B. Statutory Qualified Immunity

**¶15** Questions of statutory interpretation, including the applicability of qualified immunity, are subject to this court's de novo review. *Smyser v. City of Peoria*, 215 Ariz. 428, 432, ¶ 8 (App. 2007). Judicial construction of governmental immunity statutes "should be restrained and narrow." *Fidelity Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 7 (1998). Thus, governmental liability is presumed unless an exception clearly applies. *See Doe ex rel. Doe v. State*, 200 Ariz. 174, 176, ¶ 4 (2001). Here, the superior court found that qualified immunity under A.R.S. § 12-820.02 precluded Harianto's claims that the DPS officers involved in the wrong-way emergency were negligent.

**¶16** Section 12-820.02 states:

> A. Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:

> 1. The failure to make an arrest or the failure to retain an arrested person in custody.

As previously determined by this court, "failure to make an arrest" includes the "failure to make an investigatory stop which may or may not lead to an arrest." *Walls v. Ariz. Dep't of Public Safety*, 170 Ariz. 591, 595 (App. 1991).

---

[1] Because Harianto failed to establish causation relating to ADOT's alleged negligence, we need not address whether absolute immunity under A.R.S. § 12-820.01(A)(2) bars that claim. To the extent Harianto appeals the superior court's determination that absolute immunity applied to DPS for its wrong-way prevention policies and procedures, that argument is waived. Although the argument is briefly mentioned in Harianto's opening brief, it is not developed. *See* ARCAP 13(a)(7). More importantly, the reply brief confirms that Harianto "do[es] not, in this appeal, challenge DPS's failure to have specific wrong way driving policies/procedures."

¶17        Despite the availability of statutory qualified immunity, public employees are not shielded from liability if their actions are intended to cause injury or are grossly negligent.  A.R.S. § 12-820.02(A).  Harianto does not challenge the superior court's ruling that qualified immunity applies to the actions of the individual DPS officers in responding to the wrong-way emergency under *Walls*.  Instead, Harianto argues qualified immunity does not apply here because Trooper Schmidt was grossly negligent in responding to the Harianto accident.  As the State points out, however, Harianto did not make any allegations of gross negligence in the amended complaint.  Regardless, we are not persuaded any genuine disputes of material fact exist as to whether Schmidt was grossly negligent.

¶18        A public employee acts with gross negligence when such employee knows or has reason to know that an action or lack thereof "would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result."  *Walls*, 170 Ariz. at 591, 595.  For the question of gross negligence to advance to the jury, evidence of such negligence "must be more than slight and may not border on conjecture."  *Id*.

¶19        Harianto argues that if Schmidt had sped towards the wrong-way driver, rather than immediately initiating a traffic break, the accident would not have occurred.  The record indicates that when Schmidt received the call at 4:22 a.m. regarding Horan's wrong-way driving, he acted immediately.  He began initiating a traffic break in compliance with DPS's Highway Operations Manual.  He formulated a plan to create a roadblock with his patrol car to stop Horan once the traffic break was complete.  Nothing about Schmidt's response suggests gross negligence.  It was Horan's wrong-way driving, not Schmidt's reaction, that created a high probability of harm.  Schmidt acted to decrease the probability of harm, and speculation that a different course of action would have led to different results is, on this record, mere conjecture.  The superior court did not err in concluding that the evidence cannot support a finding of gross negligence.

C.    **Failure to Train**

¶20        In the statement of facts section of his opening brief, Harianto mentions that DPS failed to adequately train its "dispatchers" to respond to wrong-way driver incidents.  Harianto also suggests that had one of the dispatchers undertaken various actions, the tragedy would have been avoided.  But because he has provided no legal analysis to demonstrate how or why the superior court erred, the argument is waived.  *See State v. Moody*,

208 Ariz. 424, 452, ¶ 101 n.9 (2004) ("In the 'fact' section of his brief, [the defendant] also mentioned [a theory], but he made no argument regarding it. Merely mentioning an argument is not enough[.]"); ARCAP 13(a)(7)(A) (stating that an argument must include "contentions concerning each issue presented for review, with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies").

**¶21**        Even assuming his opening brief adequately presents an argument about negligent failure to train the DPS dispatchers, Harianto does not indicate, nor does our research reveal, when or where he timely presented this argument to the superior court. *See* ARCAP 13(a)(7)(B) (stating that each contention must contain "references to the record on appeal where the particular issue was raised"). To be sure, a portion of Harianto's supplemental expert disclosure statements included a brief summary of allegations related to DPS's dispatcher training. But in pleadings actually filed with the court—the amended complaint and summary judgment filings—Harianto did not identify any claim related to dispatcher liability based on negligent failure to train.

**¶22**        Harianto's motion for reconsideration only addressed the theory in a single sentence: "Here, Plaintiffs also alleged DPS negligently failed to train the dispatcher." But raising an argument for the first time in a motion for reconsideration is insufficient to preserve the issue for our review. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006) ("Generally we do not consider arguments on appeal that were raised for the first time at the trial court in a motion for reconsideration."). Harianto therefore waived the argument that DPS failed to train its dispatchers, because he failed to properly raise it in the superior court. *See Broadband Dynamics, LLC v. SatCom Mktg., Inc.*, 244 Ariz. 282, 287, ¶ 14 (App. 2018) (declining to consider an "issue because it was not addressed by the superior court and the facts are not sufficiently developed to permit a proper legal analysis"); *Banales v. Smith*, 200 Ariz. 419, 420, ¶ 8 (App. 2001) (finding that a failure to raise an issue in the superior court waives the issue on appeal).

**CONCLUSION**

**¶23** We conclude as a matter of law that Harianto failed to establish that ADOT's alleged negligence proximately caused the injuries suffered by the occupants in the minivan. We also conclude the alleged operational negligence of DPS officers is precluded based on statutory qualified immunity. We therefore affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA