NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HARIANTO HARIANTO, et al., *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 23-0789

FILED 10-17-2024

Appeal from the Superior Court in Maricopa County
No.  CV2015-051925
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

The Leader Law Firm, Tucson
By John P. Leader
*Co-Counsel for Plaintiffs/Appellants*

Zachar Law Firm, Phoenix
By Christopher Zachar
*Co-Counsel for Plaintiffs/Appellants*

Fennemore Craig, P.C., Phoenix
By Douglas C. Northup, Taylor N. Burgoon
*Co-Counsel for Defendant/Appellee*

Attorney General's Office, Phoenix
By Michael Tryon
*Co-Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge David D. Weinzweig joined.

---

**M O R S E**, Judge:

**¶1**        Harianto Harianto appeals from the superior court's ruling granting summary judgment to the State of Arizona ("State").    For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        At 4:27 a.m., on May 16, 2014, a wrong-way driver collided with the Harianto family's car on southbound Interstate 17 in Yavapai County.  At 4:05 a.m., the Arizona Department of Public Safety ("DPS") received its first report of the wrong-way driver via a 911 call.  At that time, the driver was in Maricopa County, approximately 17 miles from the Yavapai County line.  Because of the driver's location, the call was routed to DPS Metro West, which extends to the southern border of Yavapai County.

**¶3**        DPS Metro West dispatcher Nancy Jo Zeiher was the lead dispatcher on the call.  The call was classified as a priority 1, the highest-priority call.  Zeiher immediately dispatched the call over the DPS Metro West District radio.  At the same time, Zeiher updated the DPS Computer-Aided Dispatch ("CAD") to note that several DPS troopers were responding.

**¶4**        At 4:07 a.m., Zeiher reported in the CAD that an officer responded to the call.  Then, at 4:08 a.m., Zeiher again reported that personnel from both the Maricopa County Sheriff's Office and the Phoenix Police Department were responding to the call.  At approximately 4:12 a.m., a Metro West dispatcher notified DPS Flagstaff dispatch office ("District

2

12") that the wrong-way driver was heading their direction. At that time, the driver was still approximately 12 to 14 miles from the Yavapai County line. At 4:14 a.m., Zeiher also contacted the Flagstaff dispatch office, which notified DPS troopers in Yavapai County about the wrong-way driver.

¶5 At 4:22 a.m., the only available trooper in District 12 received the call from Flagstaff dispatch. The trooper immediately slowed down to initiate a traffic break on Interstate 17 to stop southbound traffic. He continued this traffic break for approximately one mile. At 4:27 a.m., he saw traffic ahead was backed up for approximately one mile. While the exact time of the accident is unknown, it occurred not later than 4:26 a.m.

¶6 On May 15, 2015, Harianto sued the State, the City of Phoenix, Maricopa and Yavapai Counties, and the Maricopa and Yavapai County Sheriffs. In November 2015, the court dismissed Harianto's complaint without prejudice as to City of Phoenix, Yavapai County, and the Yavapai County Sheriff. Then, Harianto filed an amended complaint solely against the State, Maricopa County, and the Maricopa County Sheriff. A year later, the superior court dismissed all claims against Maricopa County and the Sheriff. Nearly two years later, the superior court granted summary judgment for the State, finding that the State had immunity for claims against DPS and the State was not grossly negligent.

¶7 Harianto filed his first notice of appeal on June 29, 2018. This Court affirmed the superior court's holding and agreed that: 1) Harianto failed to establish the State proximately caused the injuries, and 2) any DPS officers involved were protected by qualified immunity. Further, we held that statutory immunity precluded claims that DPS dispatchers negligently mishandled the calls. Harianto appealed to our supreme court, which vacated our opinion and remanded the matter.

¶8 On June 15, 2021, this Court vacated the superior court's ruling on the negligence of the DPS dispatchers and remanded the case to consider whether Harianto could establish that the dispatchers were grossly negligent under A.R.S. § 12-713. On remand, the State moved to exclude plaintiff's expert and moved for summary judgment on Harianto's gross-negligence claim. The superior court granted both motions, ending the lawsuit. Harianto filed this notice of appeal on November 20, 2023. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**¶9** On appeal, Harianto argues that the superior court erred in granting the State's summary judgment motion and excluding his only expert witness.

**¶10** We review the superior court's grant of summary judgment de novo. *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 447, ¶ 23 (App. 2017). "When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party." *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State, Dep't of Econ. Sec.*, 183 Ariz. 100, 103 (App. 1995).

**I.     Lost-Chance Doctrine.**

**¶11** Ordinarily, causation is a factual issue reserved for the jury. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). But when a plaintiff presents insufficient evidence, offering only speculation about the cause of an injury, summary judgment is proper. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990). Thus, to survive summary judgment, the plaintiff must present evidence from which a jury could reasonably infer that the defendant's conduct was the proximate cause of the plaintiff's injuries. *Ritchie v. Krasner*, 221 Ariz. 288, 298, ¶ 23 (App. 2009).

**¶12** Harianto urges us to apply the lost-chance doctrine, which "permits the case to go to the jury on the issue of causation with less definite evidence of probability than the ordinary tort case." *Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597, 608 (1984). But while "*Thompson* 'soften[ed] the edge of the probabilities formula considerably,' . . . the proof . . . must rise to the level of substantiality." *Lohse v. Faultner*, 176 Ariz. 253, 263 (App. 1992). The lost-chance doctrine applies when the "defendant undertook to protect plaintiff from a particular harm and *negligently* interrupted the chain of events, thus *increasing* the risk of that harm." *Thompson*, 141 Ariz. at 608 (emphasis added). Further, this doctrine applies only where "the duty breached was [] imposed to prevent the type of harm which [occurred]." *Id.* Otherwise, the "traditional [negligence] rule prevails." *Id.*

**¶13** Harianto argues that had Zeiher immediately cross-dispatched her call, it would have increased the probability that the trooper could have intervened sooner to prevent the wrong-way driver accident.

However, this assertion is purely speculative. *See Grafitti-Valenzuela ex rel. Graffiti v. City of Phoenix*, 216 Ariz. 454, 460, ¶ 21 (App. 2007) ("The mere possibility of causation is not enough."). No evidence supports this claim because the trooper testified that he would not have acted as Harianto suggests; instead, he would have immediately initiated a traffic break when he received the dispatch, placing him even further away from the accident.

¶14 Furthermore, even if there was some evidence to support the inference that, despite his denial, the trooper would have acted differently, this situation does not satisfy the requirements for the lost-chance doctrine.[1] Harianto offers no evidence that Zeiher "undertook to protect [them] from a particular harm and negligently interrupted the chain of events, thus increasing the risk of that harm." *Thompson*, 141 Ariz. at 616. Instead, Harianto only contends that Zeiher should have immediately cross-dispatched the call to the Flagstaff District. And that, had she done this, the trooper would have sped towards the oncoming driver, performed a traffic break after passing Harianto, and stopped the accident from happening. But as discussed *supra* ¶ 13, no record evidence supports this assertion. Speculation that something different might have happened is insufficient. *See Grafitti-Valenzuela*, 216 Ariz. at 460, ¶ 21 ("The mere possibility of causation is not enough.").

¶15 In *Lohse*, we considered applying the lost-chance doctrine when a forest fire spread from plaintiff's property to defendant's adjoining property. 176 Ariz. 253. There, the plaintiff's expert witness testified that while "a proper fire patrol would have '*increased the probability*' of detection and suppression" of the fire, it was speculative as to whether the fire patrol would have detected and suppressed the fire. *Id.* at 260–61. We determined there was insufficient evidence that, but for the defendant's negligence, the plaintiff would have had a "substantially better chance" of escaping injury and "it was wholly speculative whether [defendant's] agents, in the absence of negligence, would have been positioned to prevent harm." *Id*. at 263 (quoting *Thompson*, 141 Ariz. at 607). Ultimately, we found the evidence there "too thin, even under *Thompson*" to apply the lost-chance doctrine. *Id.*

---

[1] For purposes of this decision, we assume that the lost-chance doctrine can apply. We note, however, that our Court typically has applied the lost-chance doctrine only in medical-malpractice cases. *E.g., Ritchie*, 221 Ariz. 288; *Stanley v. McCarver*, 208 Ariz. 219 (2004); *Koskovich v. Scottsdale Healthcare Hosps.*, No. 1 CA-CV 20-0371, 2021 WL 1098572 (Ariz. App. Mar. 23, 2021) (mem. decision); *see also, e.g., Lohse*, 176 Ariz. at 263 (declining to apply the lost-chance doctrine in a non-medical-malpractice case but noting that our supreme court "did not purport to limit its rule to" such cases).

at 264.  Here, as in *Lohse*, the evidence falls short of establishing causation "ris[ing] to the level of substantiality."  *Id*. at 263.

**¶16**　　　　Thus, no evidence supports the last-chance doctrine, *id.*, and this situation presents the "ordinary" negligence case referred to in *Thompson*, 141 Ariz. at 608.  Because Harianto presented no evidence of causation, the superior court correctly granted the State's summary judgment motion.

**II.　Expert Witness Testimony.**

**¶17**　　　　Additionally, Harianto argues the court erred in failing to allow his expert to testify.  The witness would have testified about 911 dispatcher standards of care.  Because Harianto failed to present evidence of causation, the standard of care is not at issue, and we need not address it.

## CONCLUSION

**¶18**　　　　We affirm the superior court's grant of summary judgment.



AMY M. WOOD • Clerk of the Court
FILED:　AGFV